———o———

JOSEPH SCHWICKERATH, Defendant in Error, *vs.* JOHN COOKSEY, *et al.*, Plaintiffs in Error.

1. *Equity—Mortgage—Misdescription of land—Sale—Bill by purchaser, to correct the description in the mortgage.*—A purchaser under a mortgage, cannot come into equity, requesting that other property, in the place of that sold and purchased, be subjected to his purchase on the ground that by mistake, the mortgage covered different property from that intended.

    PER ADAMS, JUDGE, dissenting,—NAPTON, JUDGE, concurring.

2. *Equity—Mortgage—Misdescription of Land—Sale—Bill by purchaser to correct the description in the mortgage—Privies.*—Equity will entertain a bill by a purchaser under a mortgage, requesting that other property, in the place of that sold and purchased, be subjected to his purchase, on the ground that by mistake the mortgage covered different property from that intended,—as between the original parties and their privies.

*Error to Morgan Circuit Court.*

*James A. Spurlock,* for plaintiffs in error.

I. The purchaser at a sale, made by a mortgagee selling under a power, for the payment of debts, must take notice of the title and its defects. He buys at his own peril. (Barnard vs. Duncan, 38 Mo., 170.)

II. There is a want of privity, and there are no equities in the bill. (Haley vs. Bagley, 37 Mo., 363.)

*Stover and Neilson,* for defendant in error.

A court of equity will grant relief against mistakes in written instruments, such as correcting mistakes in the description of lands conveyed by deed or mortgage, at the instance of a purchaser at such trustee's or mortgagee's sale. (Waldron

Schwickerath v. Cooksey, et al.

vs. Letson, 15 N. J. Eq., 126; Young vs. Coleman, 43 Mo., 179; Corby vs. Bean, 44 Mo., 379; Jennings, vs. Brizeadine, 44 Mo., 332.)

SHERWOOD, Judge, delivered the opinion of the court.

The petition in this case alleged that Thomas Cooksey, in September, 1862, agreed to and did convey by mortgage deed to Morgan county, to secure an indebtedness due by him to said county, the northeast quarter of the southwest quarter of section 2, township 42, range 19, among other land then owned by him, and that said mortgage was duly recorded; that through the mistake of the draughtsman, a different forty, to wit: the northwest quarter of the southwest quarter of section 35, township 43, range 19, was inserted instead of the forty intended, and that Cooksey never owned the tract thus mistakenly inserted; that Cooksey died March 19, 1863, leaving defendants, except the justices of the Morgan County Court, as his heirs at law; that the mortgage was given to secure two promissory notes; that these notes were not paid when they fell due; that the sheriff of Morgan county on the 5th day of August, 1869, under the terms of the mortgage, sold to plaintiff the real estate "in said mortgage deed," at public sale, and on the same day executed to him a deed "to the real estate in said mortgage deed described."

The petition then concludes with a prayer, that the title of the heirs in the forty first described be divested, and that the same be vested in plaintiff, etc.

The county justices admitted the allegations of the petition. The heirs answered, admitting that Thomas Cooksey was the holder of the legal title of the lands mentioned and referred to in plaintiff's petition, but that the same was in trust for the use and benefit of John Cooksey, his father, who furnished the purchase money, and always held and enjoyed peaceable possession of the same, and opened a farm thereon. They denied that Thomas Cooksey ever agreed to execute to Morgan county, a mortgage for the land, that any mistake was made; or, that there was any land conveyed in the mortgage but

what was intended to be conveyed ; and asserted that the mortgage was made in fraud of the rights of John Cooksey, who was in possession and the equitable owner. They also charged, that the plaintiff sold to Thomas Cooksey and Leopold Phillips his mill and lands, and induced Thomas Cooksey to mortgage his father's, John Cooksey's, land for plaintiff's debt, well knowing that defendant, John Cooksey, was the owner of, and in possession of the same, and had cleared a farm thereon ; that plaintiff, in March 1867, presented his notes and accounts to Morgan probate court, against Thomas Cooksey's estate, and certain lands were thereupon by the order of the court released and relinquished to plaintiff, who, in consideration thereof, made a release to said estate, " of all demands." They denied that there was any legal foreclosure of the mortgage or any sale ; stated, that plaintiff had no legal or equitable right to the lands described in the mortgage, much less to the lands in dispute, and they claimed the benefit of the statute of frauds, etc.

The plaintiff filed a replication, in which he denied many of the allegations of the answer, but did not deny that the mortgage was given to secure a pre-existing debt due to Morgan county by the plaintiffs, nor that he had sold to Thomas Cooksey and Leopold Phillips his mill and lands ; nor that he presented his notes and accounts against the estate of Thomas Cooksey in 1867, had certain lands relinquished to him by the administrator, and that in consideration of such relinquishment he had executed to the estate of Thomas Cooksey, "a release of all demands ; " nor that defendant, John Cooksey, had cleared a farm, etc., as alleged in his answer.

At the hearing, the plaintiff, Schwickerath, was introduced, and he testified, in substance, that in 1860 he sold some mill property to Phillips and Cooksey for $7,000 ; that they could only pay him $400 down, and that he was owing about that sum at that time ; that Thomas Cooksey and Leopold Phillips gave their note to Morgan county for $400 with himself as security, Cooksey gave his mortgage to Morgan county to secure the payment of that note, and in that way they paid the $400

cash payment on the mill property. The mortgage was on Thomas Cooksey's farm, and plaintiff and another man were sureties on the note to the county; that he paid the debt and took an assignment of the note and had the mortgage property sold, and at the sale bought it in, and at the time he bought thought he was buying the Thomas Cooksey farm. The sheriff said it was the farm he was offering for sale.

At the time the mortgage was made, he knew the farm; Cooksey showed it to him. He did not show the corners, but where the land lay. It was improved to some extent, and John Cooksey, the father of the deceased, was living on it at the time and Thomas Cooksey was there also. A mistake had been made in the mortgage as described in the petition. Plaintiff then read in evidence the mortgage deed containing a description of the land as described in the petition, to secure two notes given by Thomas Cooksey, Leopold Phillips and plaintiff, one note for $240 68, and the other for $150 38, making about $400, to Morgan county, and which mortgage was conditioned that the sheriff might sell on default of payment. This mortgage is dated September 2nd, 1862.

Mills testified, on the behalf of plaintiffs, that Thomas Cooksey and his father lived on part of the lands mortgaged.

The defendants then read in evidence as follows: The order of the probate court showing, that on the petition of plaintiff, the court had, because of the insolvency of Thomas Cooksey's estate, ordered a relinquishment to be made of the land bought by deceased to plaintiff by the administrator on the best terms that could be agreed on; and the order shows that the indebtedness of deceased then amounted to $7,550. The report of the administrator showed he had agreed to relinquish the lands, mentioned in the order to plaintiff, and that the latter had agreed to accept the relinquishment in full satisfaction of Thomas Cooksey's part of the indebtedness, that is to say, in full satisfaction of one-half of said indebtedness. This report was made March 15th, 1867, and was approved.

The release by the administrator to plaintiff, is of the same

date as the approval of the report, and is on the same conditions as above mentioned, and recites the fact of Thomas Cooksey having purchased the undivided one-half of lot 2 of northwest quarter of section 6, township 43, range 19, of plaintiff for $3,000, on January 25th, 1861, which, with interest, amounted to $3,775 07.

Defendants then read the deed from the sheriff of Morgan county to plaintiff for the lands as described in the mortgage, showing sale, etc., after advertisement of the property as described in the mortgage. This deed is dated August 5, 1869.

They also read in evidence a deed of release from Leopold Phillips and wife for the whole of the northwest quarter of section 6, township 43, range 19, in consideration that plaintiff agreed to release Phillips from all indebtedness on their promissory notes which he held on said Phillips and Thomas Cooksey. This release is of the same date as the one from Cooksey's administrator.

Defendants also read in evidence a copy of what purports to be a record of the Morgan Circuit Court, showing a judgment of foreclosure in favor of plaintiff and against Phillips and Cooksey's administrator, wherein the debt is set down at $4,690 51, and an order made for the sale of the west half of lot 2 of the north-west quarter of section 6, township 43, range 19, and east half lot of same section, township and range; but the time when this was rendered does not appear. Defendants here rested.

The plaintiff then proved by Mills, that plaintiff paid off the notes mentioned in the mortgage of Thomas Cooksey, deceased, to the county in 1869 or '70 ; that he knew the Thomas Cooksey farm : the buildings were on northwest quarter section 2, township 42, range 19, and that the N. E. 1-4, of S. W. 1-4, section 2, township 42, range 19, was improved some years before ; that plaintiff bought in the lands, and paid off the balance of the debt, as the lands did not bring enough. The court then found for plaintiff and a decree was entered accordingly ; and this case comes here on a writ of error.

Cases in many points similar to the one here presented, have heretofore occupied the attention of this court.

In Haley vs. Bagley, 37 Mo., 363, where a mortgage had been executed by Bagley to Charles Haley, to secure a payment of a certain debt, the property misdescribed and the mortgage duly recorded, it was held that the purchaser, W. H. Haley, who bought under a sale made by the mortgagee, bought at his peril, as the mortgage was on record, imparting full notice and the sale open and notorious, and the fact that he was ignorant of the mistake, would not help him. And further, that there was no equity in the bill.

In Barnard vs. Duncan, 38 Mo., 170, it is said: "The title is on record.; the records are open to all, and the purchasers can examine the title for themselves."

There can exist no doubt, as to the power of a court of equity to correct mistakes in instruments, and to reform conveyances, so as to make them speak the language originally intended. But the question at once arises, is this universally conceded power to be indiscriminately invoked? Is it to be applied to any and every case that may arise, regardless of well established equity precedents? By no means. In the present case the plaintiff bought the land as described in the mortgage—bought that which the sheriff advertised; which he sold, and which he conveyed; and the plaintiff now seeks, not to reform the mortgage, because that, forsooth, would, in order to be effectual, necessitate the reformation of the advertisement and of the sheriff's deed, but, seeing the absurdity to which such a wholesale application of the principle he so zealously contends for, would inevitably lead, he prays for a decree, in the nature, I suppose, of a sort of *equitable cut off*, to divest the title out of defendants, and vest it in himself. His theory is, that a court of equity should effectuate the intention of the parties; but is it the intention of a mortgagor, that his property shall be sold without advertisement? Can that condition precedent to a valid sale, if wanting, be supplied by the decree of any court? This question affords its own emphatic answer in the negative.

What rights did Morgan county acquire by reason of the

mortgage ?  Simply these : To have any mistake made in the description of the land, (when such mistake should be clearly and unequivocally established,) corrected, and then to foreclose the equity of redemption.  Can the purchaser at a foreclosure sale, from the fact of his purchase, be placed in any higher or better position than the mortgagee ?  Can this be done, especially, when such mortgagee never even attempted to have any alleged misdescription corrected ?

But we are referred to the case of Waldron vs. Letson, 14 N. J. Eq., 126, as sustaining the decree rendered in the court below.  An examination of that case, however, shows it to differ widely from the one here.  There, the property, including the thirty feet in dispute, had been for thirty years enclosed and known as the " tan-yard lot ;" was sold as the tanyard property by the sheriff, was bought as such by the purchaser, who took possession of the whole property known and enclosed as the tanyard lot, and expended a considerable sum for repairing.  And the defendant stood by, and permitted the property to be sold, and the purchaser to make improvements, without making known his title.  There, the court says, in speaking about the thirty-foot strip of ground in dispute, " in the present case it is obvious that the discrepancy between the description and the advertisement, and the visible boundaries of the lot, as offered for sale, could only have been ascertained by actual measurement."

In the case we are considering, there was no " actual measurement" necessary.  The property was described by its legal sub-divisions, and the particular forty-acre tract, about which this controversy arose, was situate miles away, in a different section and township from the one alleged to have been misdescribed, and nothing but an entire disregard of those precautions, which both law and equity enjoin of purchasers at public sales, could have misled the buyer in this instance.

In Waldron vs. Letson, *supra*, it was established by the most conclusive proof, that a mistake had been made in the description of a portion of the property intended to be con-

6—VOL. LIII.

veyed. And it need scarcely be said, that the evidence in that record, falls far short of being conclusive here.

De Reimer vs. Cantillon, 4 John's Ch. 85, is cited by the court in Waldron vs. Letson, as sustaining the views in the latter case.

But in De Riemer vs. Cantillon, the only mistake was in the sheriff's deed. " The entire possession of the defendants" was sold. They were present at the sale and delivery of the possession of the land, " and assisted in carrying the contract into effect according to its true intent and meaning."

And that case, which resulted in a decree perpetually enjoining defendants from proceeding at law, evidently rests on the ground of equitable estoppel. And had the court in Waldron vs. Letson, based its conclusions on the same ground, no objection would be urged against the opinion therein delivered.

In conclusion, the case here differs *toto coelo* from that of Waldron vs.Letson, and from that of De Reimer vs. Cantillon. The allegations of the petition do not show, nor does the evidence offered in their support, that the plaintiff is entitled to equitable relief.

For these reasons the judgment will be reversed, and the petition dismissed.

Judges Napton and Adams dissent; Judges Wagner and Vories concur.

ADAMS, Judge, delivered the dissenting opinion.

This record seem to be badly made out, and it is difficult to make a proper statement. It appears,however,to be an equitable action to have the title of forty acres of land vested in the plaintiff.

It is alleged, that Thomas Cooksey, deceased, in his life time, made a mortgage on his farm to secure a debt to Morgan county. That this forty acres was a part of the farm, and was intended to be included in the mortgage, and was in fact, in contemplation of the parties, comprehended in the mortgage, but by mistake of the draughtsman, was omitted. The plaintiff, at the sale under the mortgage, bought all the land,

and supposed this forty acres was part of his purchase, and he paid for it as such.

The sale was made after the death of the mortgagor, and this suit was brought by plaintiff, as purchaser under the mortgage sale, to correct the alleged mistake by coercing from the defendants the title they hold as heirs of the deceased mortgagor.

The plaintiff introduced himself as a witness on the trial, and was objected to as incompetent on the ground that he was a party to the suit, and the mortgagor being dead, ought not to be allowed to testify in his own behalf. The court found the issues for the plaintiff, and made a decree in his favor, vesting title in him.

1. Our statute, (W. S. 1372, § 1,) allows a party to testify in his own favor, except when one of the original parties to the contract or cause of action in issue and on trial, is dead or insane, then the other party to such contract or cause of action is not permitted to testify for himself. The plaintiff was no party to the mortgage in which the mistake occurred; and therefore, notwithstanding the mortgagor was dead, he was a competent witness to testify in regard to such mistake. (Looker vs. Davis, 47 Mo., 140.)

2. The doctrine, that a court of equity will correct mistakes in deeds, mortgages, &c., is too well settled to need illustration or citation of authorities. Although this was not a suit to rectify the mortgage deed, it was in effect the same thing. The purpose was the same. It was to vest the title in the plaintiff to the land which he really bought, and which in equity was included in the mortgage.

The mistake that occurred in the mortgage, was continued in the proceedings of foreclosure, all parties to the transaction believing that the real land in controversy was actually purchased by the plaintiff; and in equity it was purchased and paid for by him, and possession thereof taken by him. Under these circumstances the point is, whether a court of equity is not bound to interfere and grant him the desired relief? The settled doctrine is that such interference extends to the

original parties, or those claiming under them in privity; such as personal representatives, heirs, devisees, legatees, assignees, voluntary grantees or judgment creditors, or purchasers from them with notice of the facts." (See Sto. Eq., § 165; Haley vs. Bagley, 37 Mo., 369.)

These parties come within the rule here laid down. The defendants are heirs of the mortgagor, and have no right to resist the interference of the writ; and the plaintiff is assignee of the mortgagee by means of his purchase, and has the right to invoke the aid of a court of equity in his behalf.

In Waldron vs. Letson, 15 N. J. Eq., 126, the facts were almost precisely the same as in this case, and the chancellor in an able opinion, vindicated the doctrine here laid down, and granted the relief.

In Haley vs. Bagley, 37 Mo., 363, the main point was a defect of parties, and the case seems to have turned on this point.

The remark of the learned Judge, that the mortgage was on record and imparted notice, and that the sale was open and notorious, and the purchaser bought at his peril, applies to all such sales. But it does not impugn the doctrine, that, if in fact, a mistake really existed, and was continued throughout the whole proceedings, a *bona fide* purchaser at such sale, would become invested with the equitable title.

The point, whether he was a *bona fide* purchaser, and entitled to the relief sought, would be a question of evidence. The fact that it was a public sale, and that the mortgage was recorded, &c., would not be conclusive evidence against the validity of the equity of the purchaser.

In my opinion, the judgment ought to be affirmed, and in this, Judge Napton concurs.