# Youngstown Electric Light Company, Appellant, *v.* Butler County Poor District.

*Equity—Mistake—Negligence—Executed contract.*

A mistake will not be relieved against if it is the result of the party's own negligence, as for instance, where he has not taken the trouble to read or to have read to him the paper he was executing, and especially is this the case where the application for relief has been postponed until the

contract has been fully performed by both parties, and the party seeking relief does not offer or is unable to restore the other party to his original position.

In order to justify a decree for reformation in cases of pure mistake, it is necessary that the mistake should have been mutual. Where the mistake has been on one side only, the utmost that the party desiring relief can obtain is rescission, not reformation.

After a poor house has been completed under a contract with the county commissioners approved by a judge under the Act of April 19, 1895, P. L. 38, a bill cannot be maintained by the contractors for a reformation of the contract on the ground of mistake, and for the payment of an amount in excess of the contract price, where the mistake alleged was in constructing the building in accordance with plans and specifications of their own engineer without knowledge that they did not conform to the plans and specifications accompanying the contract and on file in the commissioner's office. In such a case there is no mutual mistake as to a material fact.

Argued May 12, 1902. Appeal, No. 77, May T., 1901, by plaintiff, from decree of C. P. Butler Co., Sept. T., 1901, No. 3, dismissing bill in equity in case of Youngstown Electric Light Company, now the Youngstown Consolidated Gas and Electric Company, v. Butler County Poor District. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Bill in equity for reformation of a contract. Before GEER, P. J.

Demurrer to bill.

The averments of the bill are stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing the bill.

*H. H. Goucher*, for appellant.—The bill cannot fail for want of jurisdiction, for " mistake " is one of the subjects of original jurisdiction in chancery, and one of the subjects of concurrent equitable jurisdiction under our statutes: Gump's App., 65 Pa. 476 ; Riegel v. American Life Ins. Co., 140 Pa. 193 ; Babcock v. Day, 104 Pa. 4 ; Wilson's App., 109 Pa. 606 ; Goettel, v. Sage, 117 Pa. 298 ; Cunningham v. Fourth Baptist Church, 159 Pa. 620 ; Mays v. Dwight, 82 Pa. 462 ; Wilson v. Pearl, 12 Pa. Superior Ct. 66 ; Brady v. Standard Loan Assn., 14 W. N. C. 419.

*T. C. Campbell*, with him *P. W. Lowry*, for appellee.—A contract entered into in mutual mistake may be rescinded on discovery of the mistake, if parties can be placed in their former position. . If this cannot be done by reason of something done under the contract before the mistake is discovered, the injured party may have compensation in damages recovered in a suit for them: Blygh v. Samson, 137 Pa. 368.

OPINION BY RICE, P. J., July 10, 1902:

The commissioners of Butler county, acting under the authority conferred by the Act of June 4, 1879, P. L. 78, and being about to erect buildings for the maintenance of the poor, entered into a written contract with the plaintiff wherein the latter agreed as follows : " The contractor, under the direction and to the satisfaction of the commissioners of said county, and Owsley & Boucherle, architects, acting for the purpose of the contract as agents for said owner, shall and will provide all materials and perform all the work mentioned in the specifications on file in the commissioners' office, as shown by said drawings prepared by said architects for installing a system of electric wiring and interior conduits for the same in the new County Home for Butler county, Pennsylvania, according to the aforesaid plans and specifications, which have been adopted and approved by the commissioners of Butler county, and by the court of said county, which plans and specifications are hereto attached and made a part of this contract." The price named in the contract was $1,683. The contract was approved by the judge of the court of common pleas of the county, it being assumed by him and the county commissioners that under the Act of April 19, 1895, P. L. 38, his approval was essential.

The plaintiff performed its part of the contract and has been paid the stipulated price, but now seeks to recover the additional sum of $792.60, for work and materials, which, admittedly, it was bound by the contract to do and furnish. If it was not so bound, then it is not in need of equitable relief. The grounds upon which it seeks to recover this sum are, that its bid was based on plans and specifications accompanying the same, which it supposed to be a copy of the plans and specifications of the architects, on file in the commissioners' office, and

that "the bids were opened and read by the commissioners' clerk, and the contract awarded to the plaintiff company . . . . without reference to or knowledge of the fact that the said bid of $1,683 was based on special plans and specifications prepared by the engineer of the plaintiff company, and did not cover all the work and material required by the plans and specifications of said architects, on file in said commissioners' office, and of which fact the said county commissioners and the said plaintiff company, and its general manager were then alike ignorant."

The prayers of the bill are: first, that the terms of the written contract, "in so far as the same stand in the way of the plaintiff's recovery for said extra work and material, be set aside and treated as naught;" second, that the defendant be required to pay to the plaintiff the sum of $792.60, which, it is alleged, was the actual cost and expense of the work and material not called for by the plans and specifications which accompanied its bid.

The contract, as reformed in accordance with the prayers of the bill, would obligate the defendant to pay $1,683 for the work and materials covered by the plaintiff's bid, and what they were reasonably worth for the work and materials not included therein. There are several well founded objections to granting the relief prayed for.

In the first place, the result would be to substitute another contract for that approved by the court, which, assuming this to be a "county building," would be violative of the provisions of the act of 1895, as is clearly shown in the opinion of the learned judge below. We are not prepared to decide that the act of 1895 does not apply.

But assuming that it is not a county building within the meaning of that act—a point upon which it is not necessary at this time to express a more decided opinion—the unavoidable inference from the facts averred, taken in connection with what is omitted to be averred in the bill, is, that the plaintiff's mistake, if any, was due to its own negligence. The plans and specifications upon which the commissioners invited bids were on file in their office and were accessible to the plaintiff; it is not alleged in the bill that the plaintiff was induced to suppose that the plans and specifications, prepared by its engineer, were copies of those filed in the commissioners' office, by

anything that was said, done or omitted by the commissioners or their agent; nor does it appear what induced the plaintiff to so suppose. The bill is silent upon that subject. Further, the contract recites that the plans and specifications prepared by the architects and approved by the commissioners and the court were attached to and made part thereof, and there is nothing in the bill to contradict, qualify or explain this recital. Presumably, therefore, they were before the parties when the contract was executed and the plaintiff's officer had full opportunity to inspect them before signing. If he examined them, he must have seen that they did not conform to the plan and specifications prepared by the plaintiff's engineer; if he signed the contract without examining them he was inexcusably negligent. The general rule is, that a mistake will not be relieved against if it is the result of the party's own negligence, as for instance, where he has not taken the trouble to read, or to have read to him, the paper he was executing: Bispham's Equity, sec. 191; Greenfield's Estate, 14 Pa. 489, 496; Pennsylvania R. R. Co. v. Shay, 82 Pa. 198; Susquehanna Mutual Fire Ins. Co. v. Swank, 102 Pa. 17; Lewis v. Dunlap, 5 Pa. Superior Ct. 625. Especially is this the case where the application for relief has been postponed until the contract has been fully performed by both parties, and the party seeking relief does not offer or is unable to restore the other party to his original position. "An instrument may be reformed in cases of fraud, accident or mistake, but where the mistake was the result of the supine negligence of a party who sleeps upon his rights until other duties and responsibilities have grown up, the law will not help him:" PAXSON, J., in Susquehanna Mutual Fire Ins. Co. v. Shanks, supra. If the plaintiff exercised ordinary prudence, and had due regard for the terms of the contract it had undertaken to perform, it is difficult to see how it could have avoided discovering the discrepancy between the plans and specifications prepared by its engineer and those attached to and made part of the contract, before it entered upon performance. If it had moved then to be relieved from its contract, its position would be much better; for if the contract had been set aside at that time, the commissioners might have entered into a contract with another party, which, possibly, would have been more advantageous to the county

than that which the plaintiff now seeks to have established
and enforced. The importance of a firm enforcement of the
principles above stated, where contracts for public improve-
ments awarded after competitive bidding, are involved, cannot
be overestimated. To hold them to be of slight importance would
be to offer a premium upon gross carelessness, if not worse.

There are other principles applicable to the case, which have
been thus stated : " The mistake may consist either in the cir-
cumstance that the instrument by which the parties designed
to express their intention does not so express it, or does not
express it accurately ; or in the circumstance that the intention
of the parties, though correctly expressed, has, nevertheless,
been reached through some misapprehension or ignorance. In
one case the intention is erroneously expressed ; in the other
the intention is founded on error. The relief pertinent to the
first case is correction ; to the second rescission : " Bispham's
Equity, sec. 190. " To reform a contract, and then enforce
it in its new shape, calls for a much greater exercise of the
power of a chancellor than simply to set the transaction aside.
Reformation is a much more delicate remedy than rescission.
Hence, in order to justify a decree for reformation in cases of
pure mistake, it is necessary that the mistake should have been
mutual. Where the mistake has been on one side only, the ut-
most that the party desiring relief can obtain is rescission, not
reformation : " Bispham's Equity, sec. 469. We are speak-
ing now of a case of pure mistake, and not of a case where
there is mistake on one side and fraud on the other. It is
clear that no mistake was made in the expression of the inten-
tion of the parties. Both parties intended to enter into a con-
tract whereby the plaintiff would be obligated to do the work and
furnish the materials required by the plans and specifications,
which had been prepared by the architects, adopted by the com-
missioners and approved by the court. When it is said that
equity will reform a written agreement so as to express and
carry out the intention of the parties, the intention meant is the
intention of both parties as to something upon which their minds
actually met. It seems clear, therefore, that the case is not one
in which a reformation of the instrument, by increasing the price
to be paid, or by substituting the plans and specifications pre-
pared by the plaintiff's engineer for the plans and specifications

adopted and approved as aforesaid and attached to and made part of the contract, would be warranted. To thus decree would be to hold the defendant to a contract which the commissioners did not intend to make, and to which they never assented. Is a case warranting a cancelation of the contract presented? The plaintiff intended to enter into the contract, that was entered into. It did not intend to enter into a contract to do part of the work and to furnish part of the materials. Its mistake was as to what the plans and specifications, made part of the contract, required. It is inferable that had it not been for this mistake it would not have entered into the contract. Its intention was not erroneously expressed in the contract, but it was reached through misapprehension or ignorance, for which it, alone, was responsible. But it is scarcely conceivable that the commissioners did not know what those plans and specifications required or were under any misapprehension as to that matter; at least it is not alleged in the bill. As alleged in the bill, the commissioners' mistake consisted in their ignorance of " the fact that the said bid of $1,683 was based on special plans and specifications prepared by the engineer of the plaintiff company, and did not cover all the work and material required by the plans and specifications " on file in the commissioners' office. Neither ignorance nor misapprehension on their part as to what the latter required, which is the material fact, is distinctly alleged. There was not mutual mistake as to a material fact. This consideration, taken in connection with the fact that the plaintiff's mistake, if any, was due to its own negligence, the fact that application for relief was not made until after the contract had been fully performed and the plaintiff had obtained all the benefits it secured, and the fact that it is now impossible to put the other party in statu quo, is fatal to the plaintiff's case, even if it be conceded that the act of 1895 does not apply.

The decree is affirmed, the costs to be paid by the appellant.