# Keen *v.* Eaby, Appellant.

*Contracts—Real estate—Agreement to purchase—Railroad as encumbrance—Acreage—Deficiency in quantity.*

Certain real estate advertised as "a tract of sixteen acres" was sold at public sale. The purchaser thereafter refused to accept the

deed on the grounds (1) that the land was subject to the encumbrance of a right of way of a railroad company acquired under the right of eminent domain; (2) that the tract less the acreage covered by such right of way did not amount to sixteen acres. It appeared that the purchaser had lived within half a square of the property for a period of ten years, had worked upon it and was entirely familiar with it. *Held,* the lower court did not err in charging that if plaintiff's evidence showing these facts was believed the verdict should be in the plaintiff's favor for the amount of the purchase-price; and a verdict for the plaintiff was sustained.

Argued May 15, 1916. Appeal, No. 338, Jan. T., 1915, by defendant, from judgment of C. P. Lancaster Co., August T., 1914, No. 53, on verdict for plaintiff in case of Clara L. Keen and Anna L. Myer v. Peter R. Eaby. Before BROWN, C. J., MESTREZAT, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit against surety to recover purchase-price of real estate.

The facts appear from the following opinion by LANDIS, P. J.:

The instructions to the jury in this case were that, if they believed the evidence of the plaintiff, which was not in dispute, their verdict should be in favor of the plaintiff for the sum of $2,470.70, and thereupon they rendered a verdict for the plaintiff for that amount. In order now to properly pass upon the above rules, it is necessary to first ascertain what that undisputed evidence was, and then to determine whether it was sufficient to support the jury's finding.

Henry Keen, being the owner of four contiguous tracts of land, with improvements, located near Bird-in-Hand, in East Lampeter Township, Lancaster County, died on July 8, 1912, intestate. He left surviving him a widow, Jane P. Keen, and two daughters, Anna L. Myer and Clara L. Keen, both of whom were of legal age. To these daughters, the said land descended under the intestate laws of this Commonwealth, subject to the

widow's dower.   On September 19, 1913, these two heirs offered the said land for sale, at public sale, and it was then knocked down to Winfield S. Ramsey, for the sum of $3,637.00.   This sum included the widow's dower. Peter R. Eaby, the above named defendant, became security for Ramsey for the faithful performance of the conditions of sale.   The purchase-money was to be paid on April 1, 1914, and the deed was on that date to have been delivered to the purchaser.   When, however, that time arrived, or at the subsequent time agreed upon between the parties, Ramsey refused to accept the deed which was tendered to him to pay the purchase-money. The plaintiffs then brought this suit against his surety for its recovery.   The question arises whether or not Ramsey was justified in his refusal to take and pay for the land.

The conditions of sale contain the following description as to the property which was to be sold: "On the premises in East Lampeter Township, on the road leading from Bird-in-Hand to Mechanicsburg, near Bird-in-Hand, a tract of 16 acres, with a two-story frame house, frame bank barn, etc., as property of heirs of Henry Keen, deceased." This property was not sold by the acre, but as a whole.   The tracks of the Pennsylvania Railroad run through the farm, that company having, by virtue of its right of eminent domain, on May 14, 1877, entered upon and occupied 2.432 acres.   It has since the sale been ascertained that the contents of the farm, as measured outside of the right of way, amount to about 14½ acres.   When, however, the deed was tendered to Ramsey, the description included the right of way, and the total amounted to about 17 acres and 1 perch.   The reasons advanced by Ramsey for declining to take the farm are, that there are not in it 16 acres exclusive of the right of way, and in addition it is urged that the right of way is an encumbrance on the Keen land, which prevents the plaintiffs from giving a clear title.   The evidence shows that Ramsey lived, for from

ten to twelve years, only half a square away from the Keen property; that he knew it, and was familiar with its lines; and that he worked upon it for the plaintiffs for a year and a half on both sides of the railroad. It is not disputed that, after Ramsey refused to take and pay for the farm, the plaintiffs rented it to the tenant that Ramsey himself had agreed to rent to, for the sum of $200, money rent. These are all the material facts presented in the case.

I cannot see how the taking of a part of the land of Henry Keen by the Pennsylvania Railroad, under its right of eminent domain, can be considered as such an encumbrance upon the balance of his land as prevents his heirs from making a clear title to what was left. Under the law, the railroad company appropriated 2.432 acres for railroad purposes. For such purposes, it is theirs forever. Only if the company should cease to use it for such purposes would it revert to the adjacent land-owners. The position is quite as strong as if it were a public road or street, which, it has been decided, when plainly open to view, cannot be made the basis of such a defense. Often, conveyances cover to the center of a road or street; but no one, I think, would contend that, because of this, the road or street is an encumbrance on the title which would be sufficient to defeat an action for the payment of purchase-money for land located along the same.

In Patterson v. Arthurs, 9 Watts 152, 153, KENNEDY, J., delivering the opinion of the court said: "This is perhaps the first instance in which it has been claimed that a covenant on the part of the vendor, contained in articles of agreement for the sale of real estate, to convey the same clear of all encumbrances, or in a deed of conveyance, that the real estate thereby conveyed was clear of all encumbrances, embraced a public road or highway, in being, at the time, and previously, laid out, opened, and used, through or over the estate. Believing that it has never entered the minds of the parties, when

selling and buying lands in this State, to conceive that a covenant against encumbrances extended to public roads or highways, as such, and that the universal understanding of both sellers and purchasers has been in opposition to it, I am inclined to believe that every one whose mind has been in any degree conversant with the subject would be somewhat amazed, if not perfectly astonished, to find by a decision of this court that he had ever been under such a delusion in this respect.   Every contract or covenant is to be construed and carried into effect according to the intention of the parties; which is to be ascertained by giving to the terms and language of the contract the same meaning that men generally affix thereto; and the sense in which such terms and language are received and understood by men generally in making such contracts, ought to govern in manifesting the intention of the parties thereto.   According to this rule of construction, we are convinced beyond all possible doubt that there is no ground for holding the public highway on the lots in question to be an encumbrance within the meaning of the parties as manifested by the terms of their contract."  In Memmert v. McKeen, 112 Pa. 315, 320, Mr. Justice PAXSON said: "Encumbrances are of two kinds, viz, 1. Such as affect the title; and 2. Those which affect only the physical condition of the property.  A mortgage or other lien is a fair illustration of the former; a public road or a right of way, of the latter.   Where encumbrances of the former class exist, the covenant referred to, under all the authorities, is broken the instant it is made, and it is of no importance that the grantee had notice of them when he took the title: Cathcart v. Bowman, 5 Pa. 317; Funk v. Voneida, et al., 11 S. & R. 109.  Such encumbrances are usually of a temporary character and capable of removal; the very object of the covenant is to protect the vendee against them; hence knowledge, actual or constructive, of their existence, is no answer to an action for breach of such covenant.   Where, however, there is a servitude imposed upon the land which is

visible to the eye, and which affects not title, but the
physical condition of the property, a different rule pre-
vails." In Wilson v. Cochran, 48 Pa. 107, it was held
that "a purchaser with a covenant of general warranty
cannot, before eviction, detain purchase-money on ac-
count of a known encumbrance or defect," and that
"whilst a right of way successfully asserted against a
vendee may be a breach of covenant of general warranty,
if the purchaser have bought without notice of it, yet the
law is that he shall perform his engagements whenever
his knowledge and the state of facts continue to be the
same they were at the date of the purchase." In Friend
v. Oil Well Supply Co., 179 Pa. 290, it was decided that,
"where a continuous and apparent easement or servitude
is imposed upon land, a lessee of the servient property,
in the absence of an express reservation or agreement
on the subject takes the property subject to the easement
or servitude." In Howell v. Northampton R. R. Co.,
211 Pa. 284, 287, it was said that, "where the servitude
is visible, the purchaser is presumed to have knowledge
of it, and to have bought with this knowledge."

There was no express covenant in the conditions of
sale, except that "possession and a legal deed of con-
veyance of the property will be given on or before April
1, 1914, on receipt of the purchase-money." Of course,
this implied a legal title for the land and, as a matter of
fact, no defect has been pointed out in the title, nor, as
we have said before, was there any encumbrance upon
the land arising out of the taking of a portion of it by
the railroad company for its right of way. But, conced-
ing, for the sake of the argument, that the right of way
was a defect, the undisputed evidence clearly shows that
it was a known defect, and as there is no pretense of
fraud on the part of the plaintiffs, the rule applies that,
under such circumstances, the vendee cannot detain the
purchase-money: Youngman, et al., v. Linn, et al., 52
Pa. 413.

The case of Graybill v. Ruhl, 26 Lanc. Law. Rev. 113, is

not in point, because there the proposed street had not been physically laid out under the borough ordinance, and there is no evidence that the plaintiff knew the situation when he made his purchase. Nor do I think that the fact that the railroad's right of way is included in the deed changes the situation in any respect. The plaintiff cannot make a good title to the land appropriated by the railroad company under its right of eminent domain. The inclusion of that land conveyed none of the right of way and did no harm. At best, it transferred a possibility, which would perhaps have passed at any rate. But, as a matter of fact, the conditions of sale do not pretend to sell the land covered by the railroad tracks, but the farm of the plaintiffs, and nothing more; and a deed without it being good, that part was surplusage.

Were, then, the plaintiffs bound to convey to Ramsey 16 acres of land? As has been said above, Ramsey knew this farm and its lines, and he had worked upon it. The sale was not by the acre, but as a whole. Does, then, the fact that it contained only 14½ acres instead of 16 acres present sufficient excuse for his refusal to pay the purchase-price? In Riddle, et al., v. Foster, 32 Pa. 163, it appeared that a vendor had sold a tract of land for a gross sum, excepting a piece of 85 acres, exact measure, previously conveyed to a third party, the lines of which were visible on the ground. On a resurvey, the excepted piece of land was found to contain 90 acres and 97 perches. It was held by the court that the vendee was not entitled to a deduction from the amount of the purchase-money on account of an alleged deficiency in the quantity of land. In White v. Price, 202 Pa. 128, an agreement for the sale of land called for a farm containing about 77 acres of land, and contained repeated references to the property as the "farm." There was no stipulation for a survey, nor any provision that payment should be made for the actual contents, when thus ascertained, and there was no evidence of bad faith on the

part of the vendor.  The purchaser was familiar with
the premises and the boundaries.  It was decided that
he could not claim an abatement of the purchase-money
because a survey showed that the tract fell short by over
six acres.  In Hassel v. Denlinger, 24 Lanc. Law Rev.
323, it appeared that a vendor had executed with a ven-
dee a written agreement to sell a certain tract of land
"containing thirty-nine acres, more or less," for $5,460.
The sale was not by the acre, but for a lump sum, and
there was no provision for a survey and no evidence of
bad faith on the part of the vendor.  The deed which was
tendered described the tract as containing 36 acres and
9 perches.  It was held that the vendor was entitled to
receive the amount of the purchase-money in full.  In
Large v. Penn, 6 S. & R. 488, the question was whether
there was a covenant that the quantity of land in a cer-
tain tract should amount to two acres and three-quar-
ters, whereas in fact there was but one acre and one hun-
dred and forty perches in it.  Chief Justice TILGHMAN
said: "It is the boundaries to which the grantee must
look; he has a right to all the land within them.  The
quantity is matter of calculation, and, be it more or less,
it passes.  There is no express covenant that the quan-
tity in this case shall amount to two acres and three-
quarters of an acre, nor is there any implied covenant,
because the quantity is introduced, not by way of cove-
nant, but of description."  In Reading, et al., v. Finney,
et al., 73 Pa. 467, it was held that a misstatement of the
number of acres in a tract will not vitiate a sale of the
whole; and in Landreth v. Howell, 24 Pa. Superior Ct.
210, where a master sold in partition a tract of land de-
scribed by metes and bounds, said to contain six acres,
three rods and eight perches of land, more or less, at
$2,500 per acre, and none of the parties to the transac-
tion had any knowledge that the land described in the
paper did not contain the quantity mentioned in the de-
scription, but it was ascertained afterwards that there
was a deficiency of less than ten per cent. of the esti-

mated acreage, it was held that the purchaser, who paid over the purchase-money for the quantity mentioned in the description and accepted title, could not recover in an action of assumpsit the amount of the deficiency.

It, therefore, appears to us that the verdict as rendered is correct, and that the rules for judgment non obstante veredicto and for a new trial should be discharged.

The lower court discharged defendant's rules for judgment non obstante veredicto and for a new trial. Defendant appealed.

*Error assigned,* among others, was in dismissing the defendant's motions for new trial and judgment n. o. v.

*H. M. Houser,* with him *B. F. Davis,* for appellant.

*M. G. Schaeffer,* with him *John M. Groff,* for appellee.

PER CURIAM, May 23, 1916:

This judgment is affirmed on the opinion of the learned president judge of the court below denying a new trial and refusing judgment for the defendant non obstante veredicto.