## Snyder's Executors v. Koser

*F. Lyman Windolph* and *Martin M. Harnish*, for plaintiff.

*Bernard J. Myers, James N. Lightner,* and *Charles E. Kenworthey,* for defendant.

SCHAEFFER, P. J., February 9, 1945.—This action of assumpsit was brought by the executors of Frank B. Snyder, deceased, against defendant to recover the balance of the purchase price of real estate sold at public sale. The case is submitted to the court for its decision by trial without a jury.

### Facts

The material facts of this case are not in dispute.

1. On October 2, 1943, Frank B. Snyder offered at public sale his two adjoining tracts of land situated

partly in the Borough of Mount Joy and partly in the Township of Rapho, Lancaster County, Pa., which were struck off to defendant on his bid of $25,000.

2. On the same day defendant executed the agreement of purchase attached to the conditions of sale and paid 10 percent of the purchase price, or $2,500. The written conditions of sale provided that "possession and a legal deed of conveyance of the property will be given on the first day of April, 1944, on receipt of the purchase money".

3. Prior to the sale defendant had acted as Frank B. Snyder's agent in surveying the property, preparing certain leases, advertising the sale, and assisting in the preparation of the conditions of sale. Defendant also acted as clerk at the sale but he did not inform Frank B. Snyder of his intention to become a bidder. Defendant was paid for these services.

4. On the date of the sale, before the actual sale began, Snyder was asked by defendant whether there were any rights of way, easements, or encumbrances on any portion of the property and Snyder replied that there were "absolutely none".

5. On November 11, 1943, defendant learned that the Pennsylvania Power & Light Company was erecting an electric line across a portion of the properties under a right of way agreement, under seal, granting to the company the right to construct, maintain, and operate an electric line over Snyder's property so as to permit electric service to be rendered to an adjoining property owner. This agreement was not acknowledged and was not recorded.

6. On November 16, 1943, defendant wrote to Snyder stating that the existence of the agreement relating to the right of way was "quite a surprise" to him, in view of Snyder's representation at the time of the public sale that there were no easements or rights of way granted over any portion of the farm. In this letter defendant said: "What have you to offer in regard to this matter."

7. On November 19, 1943, Martin M. Harnish, counsel for Snyder, wrote to defendant stating that there is no right of way over Snyder's property, but only permission to put a pole along the edge to run electricity to another property. Harnish suggested that defendant drop in to see him about it "when convenient".

8. On January 14, 1944, Harnish again wrote to defendant as follows: "I have not heard anything further from you with regard to the pole you referred to on the Snyder property. Have you decided to drop this matter? If you have not, then I think we should know at once exactly what position you are taking or what you claim. I have received another letter from Frank Snyder and he would like to know about it. He feels very definitely that this is not a serious matter with regard to the property."

9. On March 23, 1944, defendant wrote to Snyder calling attention to the alleged false representation of a material fact relating to the easement in dispute and demanded "that you definitely advise me *now* whether you will convey a clear title to me on April 1, 1944, and if you cannot do so that you return to me the Twenty-five Hundred Dollars which I paid to you on day of sale, October 2, 1943. . . ." This letter was answered by telephone by Mr. Harnish, attorney for Snyder, stating that on April 1, 1944, a clear title to the property would be delivered to defendant. In a letter dated March 29, 1944, defendant again wrote to Snyder stating that he would expect to receive on the day of settlement, April 1, 1944, along with other customary evidence of a clear title the following: "(*a*) A release in writing duly acknowledged of any right of way now or heretofore existing over your property (offered by you at public sale on October 2, 1943) supported by a certified copy of the resolution of the board of directors of the Pennsylvania Power & Light Company, acknowledging said release. (*b*) Proof of the removal of any poles and wires from over your land other than those serving buildings on your land."

10. In February 1944, a representative of the Pennsylvania Power & Light Company interviewed Snyder's attorney about the removal of the electric line from the Snyder farm. It was removed by March 28, 1944. The condition of the Snyder farm with respect to the electric line was the same on April 1, 1944, as it was on October 2, 1943, the date of the public sale.

11. On April 1, 1944, Snyder tendered to defendant a deed to the properties, assignments of certain leases which had been continued at defendant's request, and a release from the Pennsylvania Power & Light Company of the right of way, to which was attached the original grant of the right of way. The release was not acknowledged and was executed by L. W. Heath, vice president, and attested by L. K. Bingaman, assistant secretary. It contained a certificate of the secretary of the corporation to the effect that L. W. Heath, the vice president, had authority to execute and deliver it in behalf of the corporation. There was no accompanying certified copy of the resolution of the board of directors of the Pennsylvania Power & Light Company authorizing the release.

12. Defendant rejected the tender and the transaction was not consummated. Subsequently, Snyder died and this suit by his executors followed.

### Discussion

In the instant case the agreement of sale provides for "a legal deed of conveyance". This means a lawful or good title for the land: Dearth v. Williamson et al., 2 S. & R. 498; Wilson et al. v. Getty et al., 57 Pa. 266; Keen v. Eaby, 254 Pa. 273, 278. Plaintiff contends that "by the terms of the conditions of sale Snyder was bound to convey to defendant a legal title for the land and no more, and that the requirements which defendant sought to impose in his letter of March 29, 1944, exceeded the measure of his legal rights".

On the other hand, the position of defendant is that defendant was entitled not merely to a good but to an

indubitable title. In Bonebrake, Exec., et al. v. Koons, 333 Pa. 443, 447, Mr. Justice Maxey in his opinion said:

"The vendee under an agreement for the sale of real estate cannot be saddled by the vendor with a title of doubtful marketability or one inviting the hazard of litigation at the hands of adverse claimants, and where the title offered by the vendor is of such a character recovery of the purchase money will be denied: Black. v. American International Corp., 264 Pa. 260, 170 A. 737; Reighard's Est., 192 Pa. 108, 43 A. 413." Accord: Speakman v. Forepaugh, 44 Pa. 363, 371; Swayne v. Lyon, 67 Pa. 436, 439; Mitchell v. Steinmetz, 97 Pa. 251.

The amended affidavit of defense sets up two defenses: (1) That defendant was induced to purchase the property by Snyder's false representation of a material fact, namely, that the property was not subject to any easement when he "knew or should have known of its existence"; and (2) that the release of the easement tendered on April 1, 1944, by plaintiff to defendant was invalid.

The alleged misrepresentation by Snyder relative to the right of way at the time of the public sale on October 2, 1943, is not controlling under the facts in this case. The status of the title on April 1, 1944, and not as of the date of sale, was fixed in the terms of the conditions of sale, in defendant's letters, and in the affidavit of defense. Defendant notified Snyder that he refused to accept possession of the premises and pay the balance of the purchase price "unless a complete release of said right of way was furnished to him at the time of the delivery of the deed and possession of the premises, to wit, on April 1, 1944, in accordance with the agreement between the parties". In another letter from defendant to Snyder, defendant inquired "whether you will convey a clear title to me on April 1, 1944". Defendant contends that his letter of March 29, 1944, to Snyder was a rescission of the old terms and an offer of

new terms of sale in view of the misrepresentation, citing the following from the notes in 109 A. L. R. 242, 244:

"The prevailing American doctrine is that, ordinarily, in the absence of misrepresentation or fraud, a vendee cannot, prior to the time fixed by the contract for conveyance, complain that the vendor's title is defective or encumbered."

Plaintiff states in his brief:

"Even if the alleged misrepresentation was material, the only right possessed by defendant was to rescind the contract in November 1943 when he was told by representatives of Pennsylvania Power & Light Company that an easement existed. This he did not do or attempt to do."

As late as March 29, 1944, or several days before the time fixed to give a legal deed and title to the purchaser, defendant in his letter of that date did not expressly repudiate or rescind the sale but imposed certain additional terms or conditions heretofore referred to. Defendant argues:

"This offer completely superseded the original vitiated bargain. Defendant had the right to insist upon strict compliance with its terms; admittedly there was a failure of compliance."

If the original terms of the sale had provided expressly that the title to the land shall be made clear and satisfactory to the purchaser within a period of time named, failure to do so would be ground for the rescission of the contract by the purchaser, if the objection to the title was a reasonable one: Meyers v. Catawissa Coal Co., 219 Pa. 1; Dillinger v. Ogden, 244 Pa. 20. The case of Kearney v. Hogan, 154 Pa. 112, cited by defendant, is distinguishable under its facts. In that case no definite time was fixed by the agreement of sale for the delivery of the deed and possession. The real estate was sold as free of all encumbrances, but the encumbrance was not removed until about two months

after the sale when a deed was tendered to defendant. It was decided that the question of reasonableness of the time was for the jury. The verdict in favor of the vendee was sustained. However, in the case at bar there is a definite time fixed by the agreement and by the acts of the parties when title was to be taken to the real estate.

In the amended affidavit of defense it is set forth that the release tendered to defendant on April 1, 1944, was invalid for the reason that it was executed by a vice president of Pennsylvania Power & Light Company without any resolution of the board of directors authorizing its execution, and for the further reason that it was not in accordance with the notice and demand contained in defendant's letter of March 29, 1944.

The written agreement of May 25, 1943, granting the right of way was not recorded as required by law. See Act of April 24, 1931, P. L. 48, sec. 1, and Pennsylvania Range Boiler Co. v. Philadelphia, 344 Pa. 34. Defendant had actual knowledge of the construction of the electric line in November 1943. It was completely removed prior to April 1, 1944, and defendant knew of its removal. It is not sufficient to say that Pennsylvania Power & Light Company could not have enforced legally the right-of-way agreement. Its existence constituted a cloud on the title and a release under the circumstances was required in order to convey a legal title. The question arises whether the release actually tendered was sufficient without proof at the time of tender of the adoption of a resolution of the board of directors authorizing its execution. The Act of May 12, 1925, P. L. 615, sec. 2, as reënacted by the Business Corporation Law of May 5, 1933, P. L. 364, sec. 305, provides as follows:

"Any note, mortgage, evidence of indebtedness, contract, or other instrument of writing, or any assignment or endorsement thereof, executed or entered into between any corporation organized or doing business

within the Commonwealth and any other person, co-partnership, association or corporation, when signed by the president or vice-president and secretary or treasurer of such corporation, shall be held to have been properly executed for and in behalf of such corporation."

This act has been construed and sustained by the appellate courts of this State. In Integrity Trust Co., to use, v. Nestor B. & L. Assn., 340 Pa. 216, judgment against defendant was upheld, although it could not be shown that the officers who had executed the bond on which judgment was entered had been authorized to execute it. In the present case the release was executed by a vice president, the seal of the corporation was attested by the assistant secretary, and the secretary of the corporation certified that the vice president, L. W. Heath, had authority to execute and deliver on behalf of the corporation the release of the right of way in question. At the hearing proof was submitted as to this authority given to the vice president, although it was not produced on the date of settlement on April 1, 1944. The amended affidavit of defense and counterclaim do not raise the issue that the release should have been signed by certain officers, but that the release of the right of way was invalid as executed by the vice president of the Pennsylvania Power & Light Company without any resolution of the board of directors of the Pennsylvania Power & Light Company authorizing the execution of the same or any other indication of authority to the vice president to execute the release. The certificate attached to the release that the vice president had authority to execute the same indicated that such authority was given.

The purchaser contracted for a good and legal title to the land and the court is of the opinion that the title relating to the right of way is not defective under the release tendered to the purchaser on April 1, 1944. The original terms of the agreement or conditions of sale

were then in force. The alleged misrepresentation by seller on the date of public sale as to the outstanding easement was not acted upon by purchaser to rescind the sale, although it was relied upon by purchaser to demand supplemental conditions to be complied with at the time of final settlement on April 1, 1944.

### Conclusions of law

1. There was no rescission of the original terms or conditions of sale entered into by the purchaser and seller on October 2, 1943.

2. The release from the Pennsylvania Power & Light Company to F. B. Snyder and Ella L. Snyder dated March 30, 1944, as executed, certified, and attached to the unrecorded and unacknowledged right-of-way agreement under date of May 25, 1943, which was tendered by Frank B. Snyder, the seller, to Henry H. Koser, the purchaser, on April 1, 1944, was sufficient in law.

3. A copy of the resolution authorizing L. W. Heath, the vice president, to execute the release in controversy relating to the right of way, as requested by Henry H. Koser, defendant, was not required.

4. On April 1, 1944, when the deed was tendered by seller to purchaser for the real estate in question, together with the release in controversy, the seller had a good, legal, and marketable title thereto which was free of the easement created by the written agreement of May 25, 1943.

### Order

And now, February 9, 1945, the prothonotary of Lancaster County is hereby directed to file and enter of record this opinion and order, to give notice thereof forthwith to the parties, or their attorneys of record, and if no exceptions are filed within 30 days after service of such notice the prothonotary is hereby directed to enter judgment in the above case in favor of Ella L. Snyder, Louise E. Wyckoff, and Frank B. Snyder, Jr.,

executors of the will of Frank B. Snyder, deceased, plaintiffs, and against Henry H. Koser, defendant, for the sum of $22,500, with interest from April 1, 1944.