Trachtenberg et al. *v.* Glen Alden Coal Co. et al., Appellants.

Argued April 9, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

522

*Franklin B. Gelder,* with him *Gilbert S. McClintock, M. F. McDonald* and *J. H. Oliver,* for appellants.

*R. Lawrence Coughlin,* with him *J. S. Russin,* for appellees.

Opinion by Mr. Chief Justice Maxey, June 25, 1946:

This is an appeal from the final decree of the court below ordering that the deed from the Sheriff of Luzerne County to the First National Bank of Ashley, dated March 5th, 1943, and recorded in Luzerne County Deed Book 792, Page 579, "be reformed so that the description of the land contained therein shall" . . . give the lot in controversy on Main Street in the Borough of Ashley, Luzerne County, a frontage of *35* feet instead of 70 feet. The decree appealed from also denied defendant's prayer for the affirmative relief it asked for.

In 1927, the appellees, husband and wife, owned a piece of real estate in Ashley Borough. It consisted of two lots, each 35 feet in front and 134 feet in depth. On each lot there was a house. The owners had acquired these two lots from Isaac Levy on November 27th, 1917. In order to pay the costs of remodelling these houses, the appellees borrowed in 1927 $5,500 from the First National Bank of Ashley and they gave as security for this loan, a bond and mortgage. This mortgage described the property subject to it as being 35 feet in front on Main Street, i.e., it described only *one* of the two 35 feet

lots, that being the lot Edward C. Cole, et al. had sold in 1912 to Isaac Levy (Levy acquired the other lot at the same time from Allen M. Davis, et al.). The mortgage contained this recital: "BEING the same premises conveyed by Isaac Levy and Dora Levy, his wife, to Louis Trachtenberg and Annie Trachtenberg, his wife, by deed dated November 27, 1917, and recorded in Luzerne County in Deed Book 518 page 349."

In remodeling the two separate buildings, the Trachtenbergs installed a new front covering both buildings so as to unify the two structures. Because of default on the payment of the debt, judgment on the bond was entered and the property sold at Sheriff's sale on March 5th, 1943. It was purchased by the First National Bank of Ashley fifteen days later. The Bank petitioned the Court of Common Pleas of Luzerne County, reciting the facts of the conveyance of the two lots to Louis Trachtenberg and wife on November 27th, 1917 by Isaac Levy and wife; the loan made to the Trachtenbergs by the Bank in 1927; the giving of the bond by the debtors, the "inadvertence" in the mortgage description of the property, the default, the entry of judgment, the issuance of a fi. fa., and the fact that in the description of the property to be sold (which description was given to the Sheriff) was the following: "Improved with a two-story frame building containing four apartments and known as 73-75 South Main Street, Ashley, Luzerne County, Penna." The petition also set forth that the Sheriff's advertisement contained the recitals as to the property: (1) "Being the same premises conveyed by Isaac Levy and Dora Levy, his wife, to Louis Trachtenberg and Annie Trachtenberg, his wife, by deed dated November 27, 1917 and recorded" . . . and, (2) Being "improved with a two-story frame building containing four apartments and known as 73-75 South Main Street, Ashley, Luzerne County, Penna.". The petition averred that: "The above two recitals indicate that the property sold was the property obtained from Isaac Levy

and Dora Levy, his wife, on the 27th day of November, 1917, as recorded in Deed Book 518 page 349 being 70 feet in width in the front of Main Street instead of 35 feet on Main Street and 70 feet in the rear instead of 35 feet as set forth in the description in said mortgage." The petition also asked the Court "to make an order directing the Sheriff to acknowledge, record and deliver a deed to the purchaser containing the description as set forth in the deed from Isaac Levy and Dora Levy, his wife, to Louis Trachtenberg and Annie Trachtenberg, his wife, dated November 27, 1917, and recorded in Luzerne County in Deed Book 518 page 349; and that the description in the record of said mortgage be corrected accordingly."

On March 30th, 1943, the Court ordered the Sheriff to deliver to the purchaser a deed "containing the following correct description of the property sold to said Bank at Sheriff's sale" . . . The correction ordered gave the lot sold a 70 feet width in front and rear, instead of 35 feet width, and corrected the description so that it covered the *two* lots which the Trachtenbergs actually owned when they made the loan. The Court also ordered that the description in the record of the mortgage "be corrected accordingly" and that the "Recorder of Deeds shall duly record this decree and note same on the margin of the record of said mortgage". This order was carried out. On July 14, 1943 the Glen Alden Coal Company purchased this property from the bank for $4500.

W. A. Edgar, President of the First National Bank of Ashley, testified that after the bank transferred its title to the Trachtenberg property to the Glen Alden Coal Company, the bank's actual loss on its loan was about $3500. The bank paid $937.38 as back taxes. When the bank sold the property to the Glen Alden Coal Company it satisfied all mortgages and judgments held against the Trachtenbergs and did not attempt to secure a deficiency judgment against them.

On September 27th, 1943, the Trachtenbergs, and other occupants of the property, filed a bill in equity

seeking to restrain the Coal Company and Alderman Frank B. Brown from dispossessing them from the property. A preliminary injunction was granted and after taking testimony on the motion to continue it, the injunction was modified so as to permit the defendants to proceed with the dispossession of the plaintiffs from that portion of the premises described in the mortgage. The injunction dissolved twelve days later, and when an appeal to this court was made we held that the dissolution of the injunction was not an abuse of discretion. (See 348 Pa. 555, 36 A. 316.) By agreement of the parties the status quo of the property was to be maintained until after final hearing and decision in the court below.

The pleadings in this case are as follows: The bill first filed prayed for "injunctive relief": (a) Restraining dispossession proceedings instituted by defendants; (b) Restraining defendant corporation from razing the building occupied by plaintiffs; (c) Restraining defendant Alderman from issuing process to dispossess plaintiffs; (d) For a Decree adjudging void a deed from the Sheriff of Luzerne County to the First National Bank of Ashley for the property occupied by plaintiffs, and also a deed from the bank conveying the same property to the defendant corporation; and (e) General relief. The original answers denied plaintiffs' right to relief. After the taking of testimony, the defendant company in accordance with the provisions of Equity Rule No. 56, filed an amended answer, setting up "New Matter" and praying for affirmative relief. The relief asked for was for the court "to correct the description in the aforesaid mortgage from Louis Trachtenberg and Annie Trachtenberg to the First National Bank of Ashley, Pa., dated May 16, 1927, and recorded in Mortgage Book 310, at page 174, so that the description thereof will conform with the description in the deed from Isaac Levy and Dora Levy, his wife, to Louis Trachtenberg and Annie Trachtenberg, his wife, dated November 27, 1917, and recorded in Deed Book 518, page 349, and in the deed

poll from Dallas C. Shobert, Sheriff of Luzerne County, to the First National Bank of Ashley, dated March 5, 1943, and recorded in Luzerne County in Deed Book 792, page 579." Plaintiff filed a responsive reply. The issues became these: (1) Whether the mortgage description of the property limiting the property to a 35 foot frontage, instead of a 70 foot frontage was caused by a mutual mistake. (2) Whether, if such a mistake was made, a Court of Equity has authority to correct it after the Sheriff's sale of the property and the delivery of his deed to the purchaser.

The Sheriff's Sale advertisement described the property to be sold under the fi. fa. as being 35 feet in front and approximately 133 feet in depth. The property described by metes and bounds conformed to the description of one lot which was the western half of the entire property of 70 feet. The Sheriff's Sale advertisement also contained the recital quoted in the last sentence of the second paragraph of this opinion.

The Chancellor in his adjudication found as a fact that it was the intention of the Trachtenbergs and of the officials of the bank that the entire property of 70 foot frontage should be included in the mortgage and that the latter's description of one lot rather than two was the result of "mutual mistake". In the decree nisi filed on June 20th, 1945, it was ordered that the plaintiffs' Bill be dismissed and that the mortgage executed on May 16th, 1927, by Louis Trachtenberg and Annie Trachtenberg, his wife, to the First National Bank of Ashley, be reformed so that the description of the land contained therein should show a width of 70 feet instead of 35 feet. Exceptions were filed to the findings of fact and conclusions of law and these were heard before the court en banc. These exceptions were not acted upon by the court en banc except as it rendered the following "opinion": (1) "While the evidence might warrant a finding of mutual mistake in the description contained in the mortgage in question, the understanding of the

mortgagees as to the land to be included therein is not clearly established, and that the satisfaction of the mortgage on July 14, 1943, eliminated the mortgage as an instrument of record, and precludes the Court from reforming the mortgage, even though the foreclosure proceedings are not a barrier to such relief;" and (2) "neither plaintiffs nor defendants are entitled to the relief respectively prayed for by them." In this "final decree" of October 2, 1945, the Court ordered that "for the purpose of clarifying the record in the office of the Recorder of Deeds, the sheriff's deed to the First National Bank of Ashley, dated March 5th, 1943, and recorded in Luzerne County Deed Book, 792, Page 579, should be reformed so that the description of the land contained therein conforms to the description embodied in the mortgage of May 17, 1927, given by the Trachtenbergs to the First National Bank of Ashley, and that this may be directed under the prayer in plaintiffs' Bill for general relief." This final decree thus negatived the decree nisi of June 20, 1945 and also the decree of March 30, 1943, and thereby it denied defendant's prayer for "affirmative relief" from the alleged mistake in describing the lot it acquired as having a frontage of only 35 feet.

There was evidence to support the Chancellor's finding that the inclusion in the mortgage of only one of the two lots was "by reason of a mutual mistake". The proceeds of the mortgage loan were used to pay a debt secured by a then existing mortgage covering *both* lots and the then attorney for the bank (now Judge THOMAS F. FARRELL), testified that the mortgage of May 17, 1927 for $5500 was "a substitute for the Levy mortgage" for $7500, which was a lien on both lots. On July 23, 1926, the Trachtenbergs had borrowed $1,000 from the same bank and as security therefor had executed and delivered a mortgage covering both lots. On November 9th, 1927, the Trachtenbergs executed a third mortgage securing a loan of $1500 on the same one lot of 35 feet described in the second mortgage. This mortgage likewise, contained

the recital as to the "same premises",[1] already quoted. President Edgar of the bank testified that after the sheriff's sale of the property, Mr. Trachtenberg came to him and said he "wanted to redeem the property for $4,000" (later increased to $4,500) which offer the bank was unwilling to accept and that Trachtenberg also discussed the renting of the property. Mr. Edgar further testified "that there was no intimation at that time or any time that we were discussing thirty-five feet". He answered "Never" when asked: "At any of these discussions or conversations, was anything said about a division or thirty-five feet of the property?" He declared that in the conversation with Trachtenberg about the latter's possible redemption of the property there was "never any discussion as to any other than the whole property". The insurance policy given the bank as additional security for the mortgage loan of $5500 covered the "entire property". The only evidence tending to deny that the mortgage covered the entire property was that of Louis Trachtenberg, who as a witness when interrogated as follows: "Did you ask Mr. Edgar to give you the mortgage on the new brick building or on the whole property?" answered: "On the brick building." Trachtenberg also testified: "I told Mr. Edgar I would give him mortgage on this brick building because it cost me over $25,000".

This was not a very clear or convincing denial of the averment and proof that the mortgage was intended by both mortgagor and mortgagee to cover the entire 70

---

[1] The fact that the mortgage in controversy contained a recital that the lot subject to the mortgage was "the same premises conveyed by" Levy and wife to Trachtenberg and wife has value only as evidence on the question of mutual mistake. The recital cannot be accepted as a legal substitute for the correct description of the property mortgaged. This court so ruled on a similar question in *Fidelity Mortgage Guarantee Co. v. Bobb et ux.*, 306 Pa. 411 (1932), where we said of such a clause that it served the "purpose of calling attention to the links in the chain of title" "rather than for the purpose of completely identifying the property conveyed".

foot frontage and if this case turned on the question whether or not the proof of mutual mistake measured up to the standards of proof in such cases which we laid down in *Bosler v. Sun Oil Company*, 325 Pa. 411, 191 A. 718, and *Cooper Farmers' Mutual Fire Insurance Co.*, 50 Pa. 299, we would hold that the proof did conform to that standard. However, this is not the pivotal question in the case at this late stage of the proceedings and we do not have to decide it.

The question whose answer decides this case is this: Where a mistake in the description of mortgaged property has been carried through the foreclosure proceedings and the sheriff's deed, is the purchaser entitled to have a court of equity correct the deed so as to vest in him property which was not expressly included in the mortgage and was not included in the sheriff's advertisement of the property to be sold? On every sound consideration of public policy this question must be answered in the negative. To embody in a judicial opinion an affirmative answer to this question would be to countenance and establish a procedure which would be likely to open the door to irregularities prolific of great injustices and which would tend to cast uncertainty on land titles derived through or from sheriff's deeds of title.

There are many reasons why it would be *inequitable* for a court of equity to order after the foreclosure of a mortgage and a sheriff's sale, the reformation of a deed by adding to the subject of a deed property which was not included in the mortgage and in the advertisement of the sale. First, it would be unfair to the mortgage debtor. He is entitled to have the *entire* property of which he is to be divested advertised for sale so that it will bring a price higher than will the mere portion advertised for sale. Second, the judgment creditor is entitled to have the *entire* property which he claims is covered by the mortgage advertised and sold to the end that a higher price may be obtained from the successful

bidder. The fact that, as in the instant case, the successful bidder was the judgment creditor, does not make the reason just stated inapplicable. Some other person might have bid higher had the property been correctly described in the advertisement and thus have rendered unnecessary for the creditor's protection his own purchase of the property. Third, the public is entitled to be correctly informed by advertisement of the size and nature, i.e., of the exact identity, of the property to be sold at the sheriff's sale so that possible purchasers may bid with exact information as to what they are bidding on. That there should be no concealment or misrepresentation, intentional or otherwise, of a fact which if known would affect bidding at a public sale conducted by an official representative of the Commonwealth is incontestable. Pomeroy's "Equity Jurisprudence" Vol. III, 5th Edition, p. 398 says: "It is held in the majority of jurisdictions that a mistake or defect in a sheriff's deed cannot be aided and the deed reformed in equity. The reason given for this rule is that a sheriff in the sale of lands, under execution or order of court, acts in the exercise of a statutory power and if his deed contains a false description or is otherwise defective, a court of equity is without jurisdiction to aid it and pass the title."

Whether or not the error in advertising the sale of this property had any effect on the bidding for the property is immaterial. If a decision in cases such as this depended on the result of an inquiry as to that, the court which conducted the inquiry would have to pass on so many collateral questions and would have to depend so much on conjecture that it would be impracticable, perhaps impossible, to reach a reasonably just result. The only rule which is compatible with the due administration of justice in such cases is a rule to the effect that after a sheriff's sale of property in a mortgage foreclosure proceeding and after the sheriff's deed is acknowledged and delivered, it cannot be reformed by a court of equity so as to include property *not* mortgaged and sold.

This court has in several cases in which attempts have been made to have sheriff's sales set aside because of inadequacy of the price paid and for certain other irregularities, such as selling the land without an inquisition, consistently held, in the language of Mr. Justice STERN in *Knox v. Noggle*, 328 Pa. 302, that "a sheriff's sale would not be set aside after the deed was acknowledged and delivered, except for fraud or want of authority to make the sale, in which cases relief might be had through an action in ejectment, or perhaps by a bill in equity, or possibly, under the Act of April 20, 1905, P. L. 239, by way of defense in proceedings for possession." In *McLanahan v. Goodman*, 265 Pa. 43 at 49, this court said: "Confirmation of a sheriff's deed cures irregularities and defects, which make the sale voidable, but not such fatal defects as render it void; and lack of power in the sheriff to make the sale is a fatal defect." (Citing cases). In *Knox v. Noggle*, supra, it was stated (though that question was not before the court) that "misdescription of the property" would not justify the setting aside of a sheriff's sale.[2]

In other jurisdictions where a court of equity has been asked to enlarge the description of property conveyed by the sheriff's deed because of misdescription of that property, the courts have quite uniformly held that equity had no power to grant the relief asked for.

In *Stephenson v. Harris*, 131 Ala. 470, 31 So. 445, there was a bill by the purchaser at a foreclosure sale, to reform the description of the land sold. The court said: "If the relief prayed were granted, it would result in giving to complainant a title by decree, to land that was not described in the bill to foreclose, not decreed to be sold, and not advertised and sold, nor conveyed by the register to him under the foreclosure decree. . . . To

---

[2] That there cannot be a setting aside of a sheriff's sale of property when such action would be prejudicial to the intervening rights of innocent parties is obvious. See 45 Am. Juris. p. 595, Sec. 22; see also *Dillard v. Jones*, 229 Ill. 119, 82 N. E. 206, 11 Am. CAS 82.

do this, amendment and reformation from the beginning of the case under which the decree of foreclosure was entered would have to be made, . . ." The court held it had no power to do this.

In *Miller v. Kolb*, 47 Ind. 220, it was held that, when a mortgage misdescribes the property intended to be mortgaged, the mistake may be corrected by a proper proceeding before foreclosure, or in an action to foreclose; but, when the mistake has been carried into a decree of foreclosure, the execution, advertisement, and sheriff's deed, the purchaser at the sheriff's sale cannot maintain an action to correct the mortgage and decree, the subsequent proceedings, and the deed. To the same effect is the decision of the Supreme Court of Indiana in *Conyers v. Mericles et al.*, 75 Ind. 443. In that case the Court after discussing other Indiana cases on the same subject said: "These cases establish the proposition, that when an incorrect description of lands intended to be embraced in a mortgage is carried into the judgment, order of sale, notice and sheriff's deed, such proceedings can not be corrected either at the instance of the mortgagee or the purchaser at such sale, but they do not decide that such mistake can not be corrected by reforming the mortgage and foreclosing it as reformed . . . The mortgage, as reformed, is a different instrument, embraces a different parcel of land, and one against which no foreclosure has been had. The judgment of foreclosure upon the land described did not adjudge that the land in dispute was not mortgaged by such instrument, and omitted therefrom by mistake, and, therefore, 'the question of description' is not *res adjudicata*, nor does such judgment form any obstacle to the reformation and foreclosure of the mortgage."

In *Marks v. Taylor*, 23 Utah 470, 65 Pac. 203, where property was so described in a mortgage by inadvertence that a portion intended to be mortgaged was not included, and a purchaser at a foreclosure sale under such mortgage asked that the mortgage, decree, and sheriff's

deed be reformed so as to include the land omitted, the court, in a rehearing opinion by it, said: "The decree of the lower court, if affirmed by this court, would invest the respondent with the title to property which was neither ordered to be sold, advertised, or offered for sale, or sold by the sheriff to her. It is true that she thought that the property intended to be mortgaged was the property offered for sale, and evidently bid in the property with that understanding, but it does not appear that other bidders, if any others were present at the sale, had the same understanding. If the property included in the reformed mortgage had been advertised for sale, it is not improbable that a higher bid than the respondent's would have been made by some other person."

In *Schwickerath v. Cooksey,* 53 Mo. 75, it was held that a purchaser at a mortgage foreclosure sale could not maintain a bill to have other property than that sold and purchased subjected to his purchase and be decreed to him, on the ground that, by mistake, the mortgage covered different property from that intended.

In *Fisher v. Villamil,* 62 Fla. 472, 39 L.R.A. (N.S.) 90, 56 So. 559, there was a bill filed by one who purchased at a foreclosure sale of his mortgage, praying that certain land which was supposed to have been included in his mortgage be ordered and decreed to be conveyed to him by the defendant mortgagors, and, in the event that they failed to do so, that the complainant purchaser be decreed to hold all the right, title, interest, and claim of the defendant mortgagors to the said land. The court refused the relief prayed for.

In *Alfalfa Lumber Co. v. Mudgett et al.,* 199 S.W. 337, it was held by the court of Civil Appeals of Texas that where an improper description is put in a mortgage and foreclosure is had and the mistake is carried into the sheriff's deed, the sheriff's deed cannot be reformed, but to get title, the mortgage itself should be reformed and another foreclosure had. In that case the court said:

". . . the sheriff advertises for sale specific property for the purpose of giving the public information that such property is to be sold. Persons interested therein may then inform themselves as to such matters, including the title, as might affect its value so as to be prepared to bid at the public sale. If upon the advertisement and sale of entirely different property by mistake in the original mortgage would permit a reformation of the sheriff's deed, the entire purpose of the advertisement of the property by the sheriff would be defeated. Here lot No. 5 was advertised and sold—a different piece of property entirely from lot No. 6, to which the defendant in execution had no title whatever. It cannot be known who would have bid, nor the amount of the bid, nor that appellant would have been the purchaser if lot No. 6 had been advertised and sold, and neither can it be known what, if any, steps appellees would in such event have taken to protect their interest in said lot No. 6. So that it is not practical to extend the reformation on account of the mistake to the sheriff's deed." Citing cases from Florida, Alabama, Indiana, Utah, Ohio and Iowa.

In *Hull v. Calkins et al.*, 137 Cal. 84, 69 Pac. 838, the Supreme Court of California refused to reform ·a commissioner's deed by making it purport to convey something which in fact had not been sold and which the commissioners were not authorized by the writ to sell. The Supreme Court said ". . . here the mistake of the judgment was not in describing the property to be sold, but in omitting to provide for the sale of a part of the property that might have been sold." In that case the California Supreme Court in criticizing and practically over-ruling the case of *Quivey v. Baker*, 37 Cal. 465, said: "It is difficult to perceive on what recognized principle of equity the court was justified in amending the sheriff's deed."

We know of no law giving us the power at this stage of the proceedings to reform the mortgage in question as prayed for by the defendant in its plea for affirmative

relief and we know of no principle of equity which would justify us, under the state of facts here present, in directing the sheriff to deliver to the purchaser at the sale of one 35-foot lot after foreclosure proceedings involving only that one lot, a deed including the lot sold *and also* a contiguous lot of the same size.

The decree is affirmed at appellant's cost.