PASO BUILDERS, INC., a California Corporation, Appellant, v. R. T. HEBARD; H & H INVESTMENT CORP., a Nevada Corporation; FIRST WESTERN SAVINGS AND LOAN ASSOCIATION, a Nevada Corporation; FIRST TITLE INSURANCE COMPANY, a Nevada Corporation; NEVADA ESCROW SERVICES, INC., a Nevada Corporation; LAWYERS TITLE OF LAS VEGAS, INC., a Nevada Corporation; AND KARSTEN T. BRONKEN, Respondents.

No. 5025

April 6, 1967 426 P.2d 731

*Morton Galane,* of Las Vegas, for Appellant.

*Michael L. Hines,* of Las Vegas, for Respondent Karsten T. Bronken.

*John Peter Lee,* of Las Vegas, for Respondents Nevada Escrow Services, Inc., a Nevada Corporation, and Lawyers Title of Las Vegas, Inc., a Nevada Corporation.

*Christensen, Bell & Morris,* of Las Vegas, for Respondents R. T. Hebard and H & H Investment Corp., a Nevada Corporation.

# OPINION

By the Court, THOMPSON, C. J.:

This suit started below as one in equity to reform a deed of trust running to the plaintiff Paso Builders as beneficiary, but later, by supplemental complaint, was converted to an action at law for damages. The case was never tried. The supplemental complaint was dismissed pursuant to Rule 12(b)(5) as to some of the defendants, and as to others, summary judgments were entered in their favor. Paso has appealed from the dismissals and summary judgments. It is worthwhile to relate the circumstances giving rise to this litigation, the original posture of the law suit, and Paso's later shift of position.

In January, 1963 Paso entered into a written agreement with Hebard for the sale of approximately 80 acres of land. A down payment of 29 percent of the purchase price was made. The balance, $321,970.80, plus interest, was to be paid in specified installments over the ensuing 3 years. An escrow was opened with Nevada Escrow Service, and instructions prepared and signed in conformity with the agreement of sale. Lawyers Title Insurance was to issue a joint protection policy of title insurance.

The agreement allowed Hebard to designate a "nominee" in whom title to the 80 acres was to vest. Hebard named the H & H Investment Corp. as his nominee, and Paso executed a grant deed to that company. The agreement also provided that the balance of the purchase price was to be evidenced by a promissory note and secured by a first deed of trust upon all but 16 acres of the property. On January 17, 1963 H & H Investment Corp. signed the note and trust deed. Hebard did not sign the promissory note as maker, though the agreement of sale provided that the obligations of the buyers were "joint and several." The trust deed was recorded, the promissory note was delivered to Paso, title insurance issued, and the escrow closed in May, 1963. Paso did not object to the form of the instruments.

The description of the property embraced by the deed of trust running to Paso was incorrect. The agreement of sale

provided that the 16 acres to be excluded by the deed of trust were "bounded on the north by Jewel Avenue, Sandhill Road on the west, and Lamb Boulevard on the northeasterly side." An exact legal description was to be suppled by Karsten Bronken, a licensed civil engineer, whom Paso was to pay. Bronken made the survey and furnished a description to Nevada Escrow and Lawyers Title in order that the deed of trust could be prepared. The legal description which he supplied did not conform to the general description of the agreement of sale, although one would not be aware of the mistake by merely reading the document. It embraced almost 20 acres rather than 16, it was not bounded on the northeasterly side by Lamb Boulevard, and extended farther along Sandhill Road than contemplated by the agreement. By excluding more property from the trust deed than intended, Paso's security was impaired to some extent.

In October, 1963 H & H Investment Corp. executed a deed of trust on some of the property which had been mistakenly excluded from the deed of trust previously given by it to Paso. This later deed of trust named First Title Insurance Co. as trustee, and First Western Savings and Loan Association, beneficiary. It secured a promissory note for $1,187,800 made by H & H Investment Corp. to First Western. A portion of the property embraced by the deed of trust was subdivided (Capitol Hills Tract No. 1) and construction commenced. The balance of that property (Capitol Hills No. 2) was further encumbered by second trust deeds on individual lots to secure the payment of various promissory notes to individual contractors for labor and materials supplied by them. The record is bare of any suggestion that either First Title Insurance or First Western, knew or should have known of the incorrect description in the prior trust deed from H & H Investment Corp. to Paso.

In December, 1963 Paso first became aware of the mistake in the description of the property of the trust deed running to it as beneficiary and commenced a suit in equity seeking reformation of the deed of trust so that the property covered thereby would conform to the agreement of sale. Paso named Hebard, H & H Investment Corp., First Title Insurance Co., and First Western as defendants. Later, Nevada Escrow Services, Lawyers Title Insurance and Bronken were added as defendants. The original complaint was twice amended. It is not useful to relate all of the motions of the various defendants successfully directed to the original, the first, and the second amended complaints. As we read the record, Paso finally abandoned its effort to plead a claim for reformation of the

trust deed. We assume that such abandonment came about because of Paso's election to foreclose the deed of trust. The record shows that in December, 1963 Paso delivered to Lawyers Title, Trustee, a written declaration of default of payments due upon the $321,970.80 promissory note given to Paso by H & H Investment. Paso demanded sale of the security. On March 31, 1964, a trustee's sale was held. Paso bid in the property for $180,000 and received a grant deed from the trustee. By choosing to foreclose the deed of trust, Paso proceeded upon a course wholly irreconcilable with the reformation of that instrument. In the words of Cardozo: "Where two inconsistent remedies, proceeding upon irreconcilable claims of right, are open to a suitor, the choice of one bars the other." Ratchford v. Cayugo County Cold Storage & Warehouse Co., 112 N.E. 447, 448 (N.Y. 1916). Trachtenberg v. Glen Alden Coal Co., 47 A.2d 820 (Pa. 1946).

In any event, the lower court granted Paso leave to file a supplemental complaint. It did so. That pleading requests damages of $177,461.10 (the deficiency remaining after foreclosure of the trust deed) from Hebard, H & H Investment Corp., Nevada Escrow Services, Lawyers Title and Bronken. First Title Insurance and First Western are not named as defendants and we deem them to be removed from this litigation.[1]

Hebard and H & H Investment jointly answered the supplemental complaint, and later moved for summary judgment. Their joint motion was granted. Nevada Escrow and Lawyers Title jointly filed a motion to dismiss the supplemental complaint pursuant to Rule 12(b)(5), or in the alternative, for summary judgment since matters outside the pleadings were presented for consideration. Their joint motion to dismiss was granted. Since the court in its order of dismissal, did not expressly exclude matters outside the pleadings from consideration (NRCP 12(b)), we shall treat the dismissal order as a summary judgment. S. & S. Logging Company v. Barker, 366

[1]The pleadings are exceedingly difficult to follow. The plaintiff's second amended complaint was dismissed as to all defendants. Thereafter, the plaintiff persuaded the court to sign an order vacating the dismissals and allowing the plaintiff to file a supplemental complaint. Plaintiff then filed a document entitled "Third Amended and Supplemental Complaint." That pleading amended nothing. It was a completely new complaint based primarily upon occurrences since the litigation started. In the circumstances we choose to look only to the claim for relief alleged in the supplemental complaint to which the judgments and dismissals from which this appeal is taken were directed.

F.2d 617 (9 Cir. 1966); cf. Buss v. Consolidated Casinos Corp., 82 Nev. 355, 418 P.2d 815 (1966). The defendant Bronken filed a Rule 12 (b)(5) motion to dismiss which was granted. We turn to determine the propriety of the rulings below as to each of the defendants.

1. Paso v. Bronken. As noted, Karsten Bronken was the civil engineer who supplied the erroneous property description. The claim for relief against him is based on negligence. He did not respond to this appeal or otherwise seek to sustain the dismissal in his favor. We choose to treat his default in this regard as a confession of error, and, therefore, reverse the dismissal. Toiyabe Supply Co. v. Arcade Dress Shops, Inc., 74 Nev. 314, 330 P.2d 121 (1958).

2. Paso v. H & H Investment Corp. The prayer for relief alleged against H & H Investment Corp. is that a constructive trust be impressed upon the real property called "Capitol Hills No. 2" (refer to statement of facts). Legal title to that property is, by trust deed, vested in First Title Insurance Company as Trustee. The beneficiary of that trust deed is First Western Savings & Loan Association. Neither the trustee nor the beneficiary is a party defendant to the supplemental complaint. Though other reasons may exist to defeat a constructive trust here, we affirm summary judgment for H & H Investment Corp. upon the ground that the plaintiff failed to join indispensable parties. Cf. Robinson v. Kind, 23 Nev. 330 (1896).

In passing we note that Paso does not seek a deficiency judgment against H & H Investment Corp. for the amount due upon the $321,970.80 promissory note after foreclosure of the trust deed given as security therefor. See Sims v. Grubb, 75 Nev. 173, 336 P.2d 759 (1959); McMillan v. United Mortgage Co., 82 Nev. 117, 412 P.2d 604 (1966).

3. Paso v. Hebard. Paso's claim for relief against Hebard rests upon the provision of the agreement of sale that the buyers shall be jointly and severally liable. Paso seeks damages of $177,460.10. The record does not disclose whether Hebard assigned his rights under the agreement of sale to H & H Investment Corporation, his nominee. In any event, it is Paso's contention, that Hebard, by promising to be severally liable for the purchase price, cannot now escape that liability by insisting that Paso must look only to the H & H Investment Corp. who signed the promissory note and trust deed.

When Paso and Hebard made the agreement of sale, the identity of Hebard's nominee, should he decide to name one, was unknown to Paso. Hence, the express provision for the several liability of Hebard. The agreement of sale does not contain the slightest suggestion that, in the event of default, Paso was to resort to the security alone. Nor does the trust deed later executed by Hebard's nominee, H & H Investment Corp., to secure the promissory note for the purchase price balance, contain an anti-deficiency clause. As noted in Montgomery v. De Picot, 96 P. 305 (Cal. 1908), "[I]t is a very easy matter, when reliance is intended to be placed on the financial responsibility of the original vendee, to specify in the contract that, in addition to the mortgage, his personal obligation shall be given." That specification was made here by providing for Hebard's several liability.

In granting summary judgment to Hebard the lower court did not express its reason. Perhaps, upon trial, a valid defense to the claim that he is personnally liable for the deficiency balance of the purchase price can be shown. We do not know. In any event, the record as it now stands does not justify a summary judgment in his favor. Therefore, we reverse and remand for trial.

4. Paso v. Nevada Escrow and Lawyers Title. It is alleged that Lawyers Title is the alter ego of Nevada Escrow. We need not be concerned with this contention. Paso's claim for relief against these defendants offers three propositions.

First, Paso seeks to impose liability for the amount remaining due following foreclosure of the trust deed, because these defendants failed to require Hebard's signature as a co-maker of the $321,970.80 promissory note for which the trust deed was given as security. Only Hebard's nominee signed the note. It is contended that this failure caused Paso to lose the personal liability of Hebard and resulted in damage. The contention is not sound, since Hebard's personal liability was secured by reason of the agreement of sale providing for his several liability. Thus, it was not essential that his signature also appear as a co-maker of the note. We express no opinion as to the duty of the escrow in these circumstances absent a provision in the agreement of sale for the several liability of Hebard.

Second, Paso urges that these defendants are somehow liable for the deficiency remaining after foreclosure by reason of the erroneous description in the trust deed foreclosed. We

think it clear from this record that Nevada Escrow and Lawyears Title were entitled to rely upon the description furnished by Karsten Bronken. The agreement of sale provided that Bronken was to supply the description. He did so, and the security instrument was prepared accordingly. There is no reason to charge Nevada Escrow or Lawyers Title with Bronken's mistake. He was not their agent, nor did the description he furnished give notice of error.

Third, it is alleged that Lawyers Title was negligent per se since it prepared the trust deed and thus engaged in the practice of law without a license to do so in violation of statute. We are referred to Pioneer Title Insurance v. State Bar, 74 Nev. 186, 326 P.2d 408 (1958); Biakanja v. Irving, 310 P.2d 63 (Cal. 1957), noted in 11 Vanderbilt L.Rev. 599 (1958). The Pioneer Title Insurance case, supra, was an injunction suit, and had nothing to do with the liability of an escrow agent should it engage in the unauthorized practice of law. In Biakanja, supra, a notary public, who was not a lawyer, prepared an invalid will. The court found liability, because damage resulted from the notary public's mistakes in drafting the will. The Notary's unauthorized practice of law in that instance was ruled to be negligence per se. We need not express our view as to whether Lawyers Title engaged in the practice of law when it prepared the trust deed, nor need we discuss the implications of negligence per se, since the title company's conduct did not proximately cause damage to Paso. The title company was obliged to comply with the provisions of the agreement of sale and escrow instructions. It did so, and may not be held responsible to the seller in damages for following the directions which the seller and buyer jointly gave. The doctrine of negligence per se, when applicable, does not dispense with proof of cause.

We conclude as follows: (1) The dismissal in favor of Bronken is reversed and the cause remanded for trial. (2) The summary judgment in favor of Hebard is reversed and the cause remanded for trial. (3) As to all other parties, the judgments below are affirmed.

BOWEN, D. J., concurs.

COLLINS, J., concuring in part; dissenting in part:

I concur in the majority opinion of the court except reversal of summary judgment in favor of Hebard, and from that order, I dissent.

This issue involves Hebard's personal liability for the deficiency in the amount due under the promissory note given for the balance on the purchase price. The property was sold under the deed of trust resulting in an alleged deficiency of $177,461.10. Paso asks judgment against Hebard personally for that amount. It contends he was a party to the contract creating joint and several obligations of the buyers (Hebard or his nominee). The contract provided the escrow holder was to vest title to the property in Hebard or his nominee and could accept a promissory note from Hebard or his nominee. Escrow holder accepted and delivered to Paso a promissory note and deed of trust from H & H Investment Company, Hebard's nominee. It was under this deed of trust the sale was had, resulting in the alleged deficiency of $177,461.10. Paso was estopped in claiming further personal liability of Hebard under the note where it accepted without objection the note and deed of trust from H & H Investment Company, and, without objection, executed and delivered its deed to H & H Investment Company.

"The word nominee ordinarily indicates one designated to act for another as his representative in a rather limited sense. It is used sometimes to signify an agent or trustee. It has no connotation, however, other than that of acting for another, in representation of another, or as the grantee of another." Schuh Trading Co. v. Commissioner of Internal Revenue, 95 F.2d 404 (7 Cir. 1938).

The use of a nominee, dummy or strawman in real estate sales transactions has a well accepted meaning. It was stated by Judge Swan in In re Childs Co., 163 F.2d 379 (C.C.A.N.Y. 1947), "It is familiar practice in real estate transactions, and particularly when a purchase money mortgage is to be given, for the real purchaser to take title in the name of a nominee or 'dummy' who will execute the mortgage; thereby the real purchaser avoids personal liability for any deficiency judgment in case the mortgage is foreclosed. [Citations omitted.] In such cases the vendor usually demands a down payment believed to be large enough to insure against the mortgagor's default, and where the mortgagee knows he is dealing with a 'dummy,' he is actually contracting for the land as his sole security. See 43 Yale L.J. 140, 141." Harvey on Real Estate Law & Title Closing, 3d Ed. § 362, p. 364. All those conditions are met in this case. There was a substantial down payment (29 percent of the purchase price), the contract of sale permitted title to vest in the nominee with the nominee to give

back the promissory note and deed of trust. Clearly appellant-seller was not dealing with an undisclosed principal, but was content to look only to the land for the balance of its purchase price.

Appellant-seller urges that use in the contract of sale of the words "Buyers" (plural) and that Sellers and Buyers were jointly and severally liable creates an ambiguity in the contract requiring factual evidence to resolve, thus precluding summary judgment in favor of Hebard. However, at the time the contract was executed there was but one buyer, who was Hebard. Nothing is said in the contract who the nominee of the buyer might even be. Obviously Hebard used a corporate nominee, H & H Investment Company, for the express purpose of limiting his personal liability for the balance of the purchase price. Paso agreed to this in the contract and carried out the agreement by conveying title to the nominee and accepting back its promissory note and deed of trust. To say Hebard is now personally liable on the note because of the joint and several obligation clause in the contract is to frustrate the parties' contract permitting use of a nominee by the buyer. It is said in Lee v. Ravanis, 212 N.E.2d 480 (Mass. 1965), "Except for some special circumstance we can see no purpose in any reference to a nominee if the buyer is obliged to incur liability on the mortgage and mortgage note." Neither can I. Nowhere in all the facts outside the pleadings is such "special circumstance" shown. See also Strawmen in Realty Transactions, 25 Wash. U.L.Q. 232 (1940).

Moreover, courts generally do not favor deficiency judgments against other than the buyer. Here appellant-seller seeks to fix personal liability on Hebard of some $177,461.10. A New York court refused to set aside a transfer of assets from a nominee to a nominator corporation precluding satisfaction of a deficiency judgment. The court refused to recognize a trust relationship between the two corporations or to set aside the conveyance as being without consideration and a fraud upon creditors. Fraw Realty Co. v. Natanson, 185 N.E. 679 (N.Y. 1933). In a note on the case it is said in 43 Yale L.J. 140, at 141, "Where the mortgagee knows he is dealing with a 'dummy,' he is actually contracting for the land as his sole security. * * * Hence, the court might, consistent with established doctrine, have sustained a legally justifiable method of avoiding deficiency judgments."

I respectfully dissent.