LAUREN A. COTY, Individually and as Special Administratrix of the Estate of MARK L. COTY and CARL R. BLINCOE and PAMELA J. SIZEMORE, as Guardians Ad Litem of ALEXANDER R. BLINCOE, a Minor, and CARL R. BLINCOE, Appellants, v. WASHOE COUNTY, WASHOE COUNTY SHERIFF'S DEPARTMENT, GREGG LUBBE, DANIEL L. CAVALLO and NICK P. BUGANSKI, Respondents.

No. 22108

September 3, 1992          839 P.2d 97

*Petersen & Petersen,* Reno, *Bradley & Drendel,* Reno, for Appellants.

*Dorothy Nash Holmes,* District Attorney, *Edward Dannan,* Chief Deputy District Attorney, and *Chester H. Adams,* Deputy District Attorney; *Margo Piscevich,* Reno; *Nick P. Buganski,* In Proper Person, Sparks, for Respondents.

## OPINION

By the Court, MOWBRAY, C. J.:

The sole issue on appeal is whether the appellants have set forth facts sufficient to sustain a wrongful death action by asserting that a deputy sheriff "affirmatively caused" their harm, pursuant to NRS 41.0336(2), in detaining, but not arresting, an intoxicated driver. We conclude they have not.

### THE FACTS

On April 14, 1990, during the Easter holiday weekend, Jamie Ray Anderson ("Anderson"), age 19, was driving his 1972 Firebird automobile in a southerly direction on Pyramid Lake Highway. At approximately 8:00 p.m., Deputy Gregg Lubbe ("Deputy Lubbe"), a deputy sheriff for Washoe County, observed Anderson driving at an excessive rate of speed and pulled him over. Thereafter, Deputy Lubbe determined that Anderson had been drinking and administered a field sobriety test, which Anderson failed. Deputy Lubbe did not arrest Anderson for drunk driving. Instead, Anderson was cited for speeding and Deputy Lubbe ordered him to park his car along the side of the road. Meanwhile, Deputy Lubbe made a radio request that Anderson's mother be contacted to arrange for Anderson's transportation from the area. The Washoe County Sheriff's Department reached Anderson's mother by telephone and requested that she come to the scene and drive him home. Deputy Lubbe left the scene once arrangements for Anderson's ride home had been

confirmed.[1] Subsequently, Anderson resumed driving in violation of Deputy Lubbe's order.

At approximately 8:30 p.m., Alexander R. Blincoe ("Blincoe") and Mark L. Coty ("Coty"), both age 16, were traveling in a northerly direction on Pyramid Lake Highway, about 24 miles north of Sparks. Blincoe was driving a 1959 MGA automobile and Coty was a passenger. Anderson's car streamed into the oncoming lane of traffic and collided with Blincoe's vehicle. As a consequence, Anderson and Coty died.

Representatives of the Coty and Blincoe families (collectively referred to as "appellants") brought separate actions against Washoe County, the Washoe County Sheriff's Department and Deputy Lubbe (collectively referred to as "Washoe County"), which were subsequently consolidated. Washoe County moved to dismiss the action, pursuant to NRCP 12(b)(5), on the ground that no special legal duty was owed to the appellants. The appellants sought to convert the NRCP 12(b)(5) motion to a NRCP 56 motion for summary judgment, pursuant to NRCP 12(c).[2] The district court did not specifically rule on the appellants' motion. However, in entering judgment in favor of Washoe County, the district court clearly considered matters outside the appellants' complaints.[3]

## DISCUSSION

We will treat the district court order as a summary judgment because the district judge considered matters outside the pleadings in granting the NRCP 12(b)(5) motion to dismiss. *See* Pasco Builders, Inc. v. Hebard, 83 Nev. 165, 169-70, 426 P.2d 731, 734 (1967) (citations omitted). Summary judgment is appropriate where there are no genuine issues of material fact and the moving

---

[1] At the hearing on the motion to dismiss, counsel for the defendants stated that Deputy Lubbe left the scene to respond to another call.

[2] NRCP 12(c) provides in pertinent part:

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

[3] Prior to setting forth its finding of facts, the district court wrote:

The Court, having taken into consideration the oral arguments presented by counsel, and after reviewing and considering as true the well-pled facts in the Complaints, the pleadings, motions and all documentary evidence submitted in these proceedings to date, now finds and concludes as follows:

. . . .

party is entitled to judgment as a matter of law. *See* American Federal Savings v. Washoe County, 106 Nev. 869, 871, 802 P.2d 1270, 1272 (1990) (citing NRCP 56(c); Levin v. Wheatherstone Condominium Corp., 106 Nev. 307, 309, 791 P.2d 450, 451 (1990)).

In Frye v. Clark County, 97 Nev. 632, 637 P.2d 1215 (1981), we held that a fire department is not generally liable to individuals because "the duty to fight fires 'runs to all citizens and is to protect the safety and well-being of the public at large.'" *Id.* at 633, 637 P.2d at 1216 (quoting Bruttomesso v. Las Vegas Met. Police, 95 Nev. 151, 153, 591 P.2d 254, 255 (1979)). Therefore, the duty of fire and police departments "is one owed to the public, but not to individuals." *Frye,* 97 Nev. at 633, 637 P.2d at 1216 (citations omitted). This rule is often referred to as the public duty doctrine.

Our decision in *Frye* recognized the following exceptions to the public duty doctrine: (1) where a public agent, acting within the scope of official conduct, assumes a *special duty* by creating specific reliance on the part of certain individuals; or (2) where a public officer's conduct *"affirmatively causes"* harm to an individual. *Frye,* 97 Nev. at 634, 637 P.2d at 1216 (emphasis added). These exceptions were codified in 1987 in NRS 41.0336.[4]

The phrase "affirmatively caused the harm" is not defined in NRS 41.0336. However, "affirmatively caused" has been defined as an act *creating* a dangerous situation *which leads directly* to the injurious result. Hennes v. Patterson, 443 N.W.2d 198, 203 (Minn.Ct.App. 1989) (defining affirmative causation pursuant to Minn. Stat. Ann. § 3.736, subd. 3(d) (West 1982)). In negligence situations, "legal cause" is determined when "the actor's negligent conduct *actively and continuously* operate[s] to bring about harm to another." Restatement (Second) of Torts § 439 (1964). We conclude that "affirmatively caused the harm," as used in NRS 41.0336(2), means that a public officer must actively create a situation which leads directly to the damaging

---

[4]41.0336 Conditions and limitations on actions: Acts or omissions of firemen or law enforcement officers.

1. The fireman, officer or other person made a specific promise or representation to a natural person who relied upon the promise or representation to his detriment; or

2. The conduct of the fireman, officer or other person affirmatively caused the harm.

The provisions of this section are not intended to abrogate the principle of common law that the duty of governmental entities to provide services is a duty owed to the public, not to individual persons.

result. Thus, the issue is whether the facts demonstrate that Deputy Lubbe was the active and direct cause of the harm to the appellants.

Once Deputy Lubbe determined that Anderson was legally intoxicated, he ordered Anderson to park his car off the road. Deputy Lubbe then made arrangements for Anderson to be escorted home through dispatch. Anderson's ensuing departure was a violation of Washoe County law.[5] Deputy Lubbe did not instruct Anderson to continue driving. Instead, Deputy Lubbe actively and directly ordered Anderson off the road. While Deputy Lubbe's actions may have been in violation of Washoe County Sheriff Departmental procedures, he was under no statutory duty to arrest Anderson.[6]

The appellants argue that the circumstances involving Anderson and Deputy Lubbe are closely related to those in State v. Eaton, 101 Nev. 705, 710 P.2d 1370 (1985). In *Eaton,* the State was held liable for a Nevada highway patrolman's failure to take reasonable precautionary measures to warn oncoming motorists of the existence of a large patch of black ice on Interstate 80, between Winnemucca and Battle Mountain, which resulted in a fatal accident. The State was held liable for its failure "to exercise due care to keep its highways reasonably safe for the traveling public." *Eaton,* 101 Nev. at 709, 710 P.2d at 1373 (quoting State v. Kallio, 92 Nev. 665, 667, 557 P.2d 705, 706

---

[5]*Obedience to police officers.* It is unlawful for any person willfully to fail or refuse to comply with any lawful order or direction of any police officer when he is performing his duties in the enforcement of this chapter. Washoe County, Nv., Code § 70.205 (October 12, 1982).

[6]The appellants imply that internal procedures of the Washoe County Sheriff's Department created a special duty on Deputy Lubbe to arrest Anderson once Anderson failed the field sobriety test. Although we have previously held that statutes and ordinances can create a special duty exception to the public duty doctrine, we have never held that a special duty may be created by internal procedures. *See* Charlie Brown Constr. Co., Inc. v. Boulder City, 106 Nev. 497, 797 P.2d 946 (1990). A review of Nevada and Washoe County laws did not reveal a statute mandating the arrest of an intoxicated driver. The dissent suggests that we adopt the clear minority view that a special duty was created by the internal departmental procedures of the Washoe County Sheriff's Office. However, internal procedures do not approach the level of statutes or ordinances, which must set forth " 'mandatory acts clearly for the protection of a particular class of persons rather than the public as a whole' " in order to create a special duty. Morgan v. District of Columbia, 468 A.2d 1306, 1314 (D.C. 1983) (citations omitted). Laws creating a special duty are a matter of public record, while internal procedures are not. Moreover, we note that the parties stipulated that no liability existed pursuant to NRS 41.0336(1) because *no special duty between Deputy Lubbe and the appellants could be found.*

(1976)). We further held that the State has a duty to "'remedy a known hazardous condition on its highways or give appropriate warnings of its presence. [Citations omitted.]'" *Id.* However, the case at bar may be readily distinguished.

In *Eaton,* the trooper failed to take any precautionary measures after being at the scene of a known hazardous condition for over an hour. Thus, the trooper may well have "affirmatively caused the harm" as contemplated by NRS 41.0336(2). In the case before us, Deputy Lubbe did take precautionary measures by ordering Anderson off the road and making arrangements for his return home. It was Anderson who set the act in motion by disobeying Deputy Lubbe's order. Therefore, we cannot conclude that Deputy Lubbe was the active and direct cause of the harm to the appellants.

Accordingly, we hold that NRS 41.0336(2) precludes this action and affirm the district court order dismissing this case pursuant to NRCP 12(b)(5).[7]

STEFFEN and YOUNG, JJ., concur.

SPRINGER, J., with whom ROSE, J., agrees, dissenting:

I dissent because, as I see it, the officer in this case may have "affirmatively caused" Mark Coty's death and Alexander Blincoe's injuries. This case was dismissed pursuant to NRCP 12(b)(5) for failure to state a claim upon which relief can be granted. Dismissal under NRCP 12(b)(5) is not proper, however, "unless it appears beyond a doubt that the plaintiff could prove no set of facts which, if accepted by the trier of fact, would entitle him [or her] to relief." Edgar v. Wagner, 101 Nev. 226, 228, 699 P.2d 110, 112 (1985).

As noted by the majority, the district court ostensibly considered evidence outside the pleadings in ruling on the motion to dismiss, and therefore the order should be regarded as a summary judgment. Summary judgment is only proper if

> "the moving party is entitled to judgment as a matter of law, and no genuine issue of material fact remains for trial;" properly supported factual allegations of the party opposing summary judgment must be accepted as true. Additionally, the pleadings and documentary evidence must be construed in the light which is most favorable to the party against whom the motion for summary judgment is directed.

---

[7]While the district court founded its decision on NRS 41.0336(2), it should be noted that the decision of whether to make an arrest is largely discretionary and NRS 41.032(2), providing immunity for discretionary acts, may well have decided this issue in the absence of NRS 41.0336(2).

Perez v. Las Vegas Medical Center, 107 Nev. 1, 4, 805 P.2d 589, 590 (1991) (citations omitted).

The plaintiffs in this case, representatives of the deceased Mark Coty and Alexander Blincoe, claim that Deputy Lubbe failed to arrest Anderson or to remove the vehicle Anderson was driving from his control, all in a manner that was contrary to official procedures of the Washoe County Sheriff's Department which require the arrest of all drivers who fail the field sobriety test. In addition, plaintiffs submitted affidavits of their counsel stating that, based upon a preliminary investigation, counsel were informed that an internal investigation into Deputy Lubbe's conduct had resulted in findings that he violated several procedures and policies of the Washoe County Sheriff's Department relative to the arrest of drunken drivers and that Lubbe was temporarily suspended.

Because there is evidence (1) that official Sheriff's Department regulations imposed on the officer a *special* duty to arrest intoxicated drivers and thereby keep them off the highways, (2) that the regulations were designed and intended to protect others from being harmed by impaired drivers, and (3) that Deputy Lubbe knowingly violated the special duty created by the regulation, I conclude that a jury could legally conclude that the harm caused by Lubbe was *affirmatively* caused and that Lubbe, the Sheriff's Department, and Washoe County are not immune from liability under NRS 41.0336.[1]

NRS 41.0336 is the codification of the common law "public duty doctrine," which holds that no liability arises out of a failure to provide police protection. This immunity rests on the principle that providing this kind of protection is a duty "owed to the public, but not to individuals." Frye v. Clark County, 97 Nev. 632, 633, 637 P.2d 1215, 1216 (1981). Liability cannot be imposed under statutory rule in this case absent a showing of affirmative causation.

"Affirmatively caused" harm is not an easy term to deal with when it is used in connection with negligence, as it is in NRS 41.0336. Although this court mentioned the term "affirmatively causes" in *Frye,* we have never defined or explained what might

---

[1]NRS 41.0336 states, in relevant part, the following:

A . . . law enforcement agency is not liable for the negligent acts or omissions of its . . . officers . . . nor are the individual officers . . . unless:

. . . .

2. The conduct of the . . . officer . . . affirmatively caused the harm.

be meant by affirmatively-caused negligence.[2] *Id.* at 634, 637 P.2d at 1216. If Deputy Lubbe, by knowingly violating an official regulation designed to protect vehicle occupants and others from the dangers inherent in drunk driving, did not "affirmatively" cause harm, then I am unable to think of an example of what affirmatively-caused harm might be. I must assume that the legislature intended that the term has meaning. I believe that I have found that meaning.

There is certainly something inherently contradictory about the idea of *affirmative* negligence. By nature, negligence is the *failure* to do something; it is, by definition, negative and not affirmative; and the question becomes whether negative, *negligently caused harm* is inconsistent with and irreconcilable with positive, *affirmatively-caused harm.*

At first glance "affirmatively caused harm" suggests intentionally caused harm. When one "affirmatively" desires to bring about a certain, harmful result, one is said to have intended that result. Obviously, however, the legislature could not have been referring to intentional torts when it spoke of affirmatively-caused harm, because police officers are not, under NRS 41.0336, entitled to immunity for intentionally caused harm, only immunity for negligent acts and omissions. Accordingly, if we are to find a meaning for the term, it must be more than mere neglect, more

---

[2] The majority carelessly cites Hennes v. Patterson, 443 N.W.2d 198, 203 (Minn.Ct.App. 1989), claiming that in that case " 'affirmatively caused' has been defined as an act *creating* a dangerous situation *which leads directly* to the injurious result." (Majority Opinion at 760; emphasis in original). The expression, "affirmatively caused" is not defined at all in *Hennes;* and, if it were, it would probably have no application to the present case because, in *Hennes,* there was no negligence at all on the part of agents of the state. ("[T]here was no evidence the snowbank along the guardrail was created by a negligent act of plowing the road." *Id.* at 203). The Hennes court went on to hold that even had there been negligence, the state's "decision to plow the snow off the traveled portions of the road and against the guardrail is immune from liability under the discretionary function exception to liability." *Id.* at 204. The *Hennes* court also held that a statutory exclusion from immunity, expressed by the statutory words "when the condition is affirmatively caused by the negligent acts of a state employee," *id.* at 201, was not applicable "because there was no evidence that the snowbank was affirmatively caused by any negligent acts of a state employee." *Id.* at 203. The case merely decides that there was no affirmative causation, without ever discussing what affirmative causation might be. The case is in perfect harmony with my dissent, as I would not dream of holding that affirmatively-caused negligence was present in a case, like *Hennes,* where there was no negligence to begin with and in which any possible negligence (piling snow too high against a guardrail) was totally unrelated to the affirmative duty created by regulation which we have in the case before us. As far as I can tell the majority's definition of "affirmative cause" (It "means that a public officer must actively create a situation which leads directly to the damaging result.") was pulled right out of the sky. (Majority Opinion at 760-761).

than mere failure to use due care under the circumstances; there must be something *affirmative* about the cause of harm that falls short of being intentional harm.

If a statutory provision is ambiguous, it should be construed in accordance with "what reason and public policy would indicate the legislature intended." Hotel Employees v. State, Gaming Control Bd., 103 Nev. 588, 591, 747 P.2d 878, 880 (1987). The standard public policy rationales behind the public duty doctrine are that the government should not be exposed to excessive liability and that the governmental process should be protected. Further, "the [public duty] doctrine is also viewed as a mecha-nism for focusing attention on whether the governmental agency owed a duty to the particular plaintiff, rather than the public as a whole." Bailey v. Town of Forks, 737 P.2d 1257, 1259 (Wash. 1987). Additionally, in Bruttomesso v. Las Vegas Metropolitan Police Department, 95 Nev. 151, 153, 591 P.2d 254, 255 (1979), we stated that:

> [t]he duty of government, in this instance the Police Depart-ment, runs to all citizens and is to protect the safety and well-being of the public at large. Consequently, government is not liable for a failure to supply police protection without a showing of a *special relationship or duty* to the particular individual.

(Citations omitted; emphasis added.)

After considering the phrase "affirmatively causes" in the context of NRS 41.0336, and after reviewing the policy rationales behind the public duty doctrine, the only meaning that I can give to "affirmatively" caused negligence is that it is the kind of negligence that results from the breach of a *special, affirmative* duty that was created by statute or regulation for the purpose of protecting an identifiable class of persons from the kind of harm the statute or regulation was designed to prevent. The public duty doctrine was created to prevent excess governmental liability and to protect the governmental process. It focuses on the duties that police officers (and other public servants) owe to the public at large and shields these officers from liability for the negligent performance of their general public duties. If, however, an officer owes a *special* duty to a person or group of persons, public duty doctrine immunity should not apply. Holding officers liable for negligence incurred from special, discrete duties does not subject the government to excess liability, nor does it unduly interfere with the governmental process. Thus, I read NRS 41.0336 to mean that an officer may affirmatively cause harm when the officer knowingly violates a statute or regulation which is designed and intended to protect others from a certain kind of

harm. An officer, under such circumstances, owes a "special duty" created by the statute or regulation; and, absent such a special duty, there can be no affirmative causation as contemplated under NRS 41.0336.

To bring this definition into the context of the police officer's negligence charged in this case, let me offer an example: Say that a police organization has enacted a regulation which requires that, unexceptionably, *all* police officers must handcuff all arrestees who are arrested for committing a felony. The purpose of the regulation is to prevent harm to police officers and others that might reasonably expected to be inflicted by escaping felon-arrestees who would not have inflicted harm had they been properly secured by handcuffs. If a police officer knowingly violated this regulation, and if, as the proximate result of the violation, a person were injured by a felon who was enabled to flee because of not having been handcuffed, then I believe such an officer could be said to have violated a special duty to the injured person and to have *affirmatively* caused the harm. I say this because the officer's *deciding* not to handcuff is more than mere inadvertence, more than mere neglect, more than mere negligence. The described officer makes a deliberate choice, not the choice intentionally to harm someone, but, rather, the choice to eschew a positive duty that was specifically imposed upon the officer by the regulation. What is *affirmative* about the causation of harm in this kind of example is: (1) a specific and *affirmative* duty to protect persons in a definable zone of danger is imposed, and (2) the officer makes an affirmative decision to avoid that duty.[3]

In the present case, Deputy Lubbe may have had a special duty, created by Washoe County Sheriff's Department procedures, and perhaps by state statute, to arrest drunk drivers and not to release them and thus create the danger of harm inherent in driving while intoxicated. Deputy Lubbe stopped Anderson, a drunk teenager who was speeding along the Pyramid Highway. Deputy Lubbe

---

[3]It could be argued that requiring a knowing and affirmative choice to violate a statute or regulation, rather than a mere "failure" to comply with such, rewards incompetence and insulates an irregular officer from liability for violating rules and laws. In other words to follow the examples given, if an officer were to fail to handcuff a felon without knowing that he was by regulation required to do so, that officer would escape liability under NRS 41.0336. My answer to this is that harm caused by unknowing failure to follow regulations is not *affirmatively* caused harm. It is the officer's *deciding* to violate the specific command contained in the regulation that gives the "affirmative" quality to the causation. As a practical matter I do not think that if my rule were followed there would be very many policemen saying: "I did not know about our regulations;" or "I did not know I was supposed to handcuff felons;" or "I did not know that I was required to arrest drunken drivers."

had a special, affirmative duty, which ran to Coty and Blincoe, members of the class of persons designed to be protected by a procedure or regulation that requires sheriffs' deputies to arrest drunk drivers and not let them drive on the highways. It appears to me that if Deputy Lubbe was required, by a department regulation, to arrest Anderson, Coty was killed and Blincoe was injured because of Deputy Lubbe's affirmative decision, in violation of this regulation, not to arrest Anderson. Even if I were to accept the majority's less-than-explicit (to be kind) definition of affirmative causation, namely, "actively creat[ing] a situation which leads directly to the damaging result," I would certainly find that the officer in this case actively created a situation that led directly to a damaging result. "Teenagers who are released after illegally drinking and driving foreseeably present a danger to the public and to themselves, and due care mandates that they be detained and their parents notified." Weldy v. Town of Kensington, 514 A.2d 1257 (N.H. 1986) (in which liability arising out of an automobile collision was based on a police officer's failure to arrest teenagers who had been observed drinking alcohol in an automobile). That Deputy Lubbe "actively created" a dangerous situation by not arresting the drunken teenagers or at least taking their car away from them is in my mind almost beyond argument. The "dangerous situation" "actively created" by the officer's breach of regulation was obvious and

> immediate; it threatens serious physical injury; the threat of short lived . . . and the plaintiffs (the motoring public) have no chance to protect themselves. Where the risk created by the negligence of a municipal employee is of immediate and foreseeable physical injury to persons who cannot reasonably protect themselves from it, a duty of care reasonably should be found. * * * [T]he calamitous consequences to the victims of accidents caused by drunken driving are all too predictable.

Irwin v. Town of Ware, 467 N.E.2d 1292 at 1300, 1304 (Mass. 1984).

Whether we define affirmative cause in terms of violation of a special, affirmative duty created by statute or regulation or in terms of actively creating a situation which leads directly to a damaging result, Deputy Lubbe is liable in this case. In *Irwin,* above, the court defined the issue thus: "Is the decision of a police officer to remove from the roadways a driver who he knows or has reason to know is intoxicated a discretionary act . . .?" *Id.* at 1298. The court held that such a decision was *not* discretionary and that liability could attach to the municipal entity. "No reasonable basis exists for arguing that a police

officer is making a policy or planning decision in deciding whether to remove from the roadways a driver who he knows is intoxicated. Rather, the policy and planning decision to remove such drivers has already been made by the Legislature." *Id.* at 1299. As I have pointed out, Officer Lubbe had no discretion to permit these teenagers to continue in control of their vehicle. The court in *Irwin* convincingly explains that the duty in these kinds of cases is not a "public duty," not a duty "owed to the 'general public,'" but, rather, one of the " 'special relationships' upon which the common law will base tort liability for the failure to take *affirmative* action with reasonable care." *Id.* at 1301 (emphasis added); *see Bailey* and *Bruttomesso,* above. I think it is clear that Lubbe's "failure to take *affirmative* action" as required of him by department regulations constitutes the affirmative cause necessary to erase any immunity created by the statute; and I agree with the *Irwin* court "that there is a special relationship between a police officer who negligently fails to remove an intoxicated motorist from the highway, and a member of the public who suffers injury as a result of that failure." *Id.* at 1303-04. The statutes which establish police responsibilities in such circumstances evidence a legislative intent to protect both intoxicated persons and other users of the highway." *Id.* at 1304. When Lubbe left these drunken boys in control of their vehicle he, for sure, (to adopt the majority definition) "actively" created a dangerous situation.[4] There can be no question but that the dangerous situation which Lubbe created by providing vehicular transportation to known drunks was a situation that led directly to the damaging result. Even if we adopt the majority's unsatisfactory, unfounded definition of "affirmative cause," Lubbe must be held responsible for affirmatively causing these deaths.

I fear that I belabor the point, but I offer in support of my position one more example of case authority which relates, of

[4]I am almost too embarrassed to comment on the majority's suggestion that Lubbe can escape liability because he "actively and directly ordered Anderson off the road." (Majority Opinion at 761). After Lubbe "determined that Anderson was legally intoxicated, he ordered Anderson to park his car off the road" and to be a good little boy and not drive any more while he was so drunk. (*Id.* at 761). I am going to resist the temptation to comment on the majority's position that all a police officer is required to do when he confronts a dangerously drunk teenage driver is to tell him to drive his car to the side and "park his car off the road." (*Id.*). If there was not, as I maintain, a clear duty to arrest, there was most certainly a special and affirmative duty to take the boys' car keys and remove the vehicle from their very hazardous and life-threatening control. As I read the majority opinion, Lubbe did not cause this tragedy; rather, " '[i]t was Anderson who set the act in motion by disobeying Deputy Lubbe's order" to go park somewhere; therefore, Lubbe, in the majority's view, was not the "active and direct cause of the harm to appellants." (*Id.* at 762). I don't think so.

course, not directly to Nevada's unique statute, but rather to the mentioned public duty doctrine upon which NRS 41.0336 is based. In *Fudge v. City of Kansas City*, 720 P.2d 1093 (Kan. 1986), the police failed to arrest or detain an obviously intoxicated man who was in a parking lot. The man then drove his car and collided with another car; the driver of the other car was killed. The Kansas court stated the following:

> Where the police *are subject to guidelines* or owe a specific duty to an individual, the general [public duty] rule does not apply and the police owe a special duty accordingly. Here, the Kansas City police department had a standard operating procedure manual which detailed mandatory procedures for handling a variety of police situations . . . . [T]he police were also subject to a General Order which set out the procedures to be followed by the police in handling individuals incapacitated by alcohol or drugs.

*Id.* at 1098 (emphasis added). The Kansas court concluded, because of police guidelines and a relevant Kansas City Police Department internal order, that "the police officers had a duty to take the intoxicated [driver] into protective custody." *Id.* The court determined that the police owed a special duty to the injured victims and noted that "[t]he police officers should have realized that taking [the drunk driver] into protective custody was necessary for the protection of third persons." *Id.* at 1099. Regulations of the kind seen here, in my opinion, create a special duty to protect third persons from drunk drivers; and, as I have pointed out, knowing violation of such a regulation constitutes affirmative causation.

If Deputy Lubbe was required, by department regulation, to arrest drunk drivers, I think his conduct falls within the affirmative causation exception of NRS 41.0336. I would therefore reverse the summary judgment and allow the jury to determine if Deputy Lubbe was required to arrest drunk drivers under department regulations and procedures and, if so, if Deputy Lubbe, the Sheriff's Department, or Washoe County should be liable for "affirmatively caused" negligence.